**UMHOFER, MITCHELL & KING LLP**
Matthew Donald Umhofer (SBN 206607)
Margaret E. Dayton (SBN 274353)
767 S. Alameda St., Suite 270
Los Angeles, CA 90021
Telephone: (213) 394-7979
Facsimile: (213) 529-1027
matthew@umklaw.com
peggy@umklaw.com

**WILLIAMS & CONNOLLY LLP** (Of Counsel)
Jessamyn S. Berniker (*pro hac vice*)
Thomas S. Fletcher (SBN 262693)
Kathryn S. Kayali (*pro hac vice*)
Michael Xun Liu (*pro hac vice*)
680 Maine Avenue, SW
Washington, DC 20024
(202) 434-5000
jberniker@wc.com
tfletcher@wc.com
kkayali@wc.com
mliu@wc.com

*Attorneys for Plaintiff Ionis Pharmaceuticals, Inc.*

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IONIS PHARMACEUTICALS, INC., a Delaware Corporation, <br><br> Plaintiff, <br><br> v. <br><br> ARROWHEAD PHARMACEUTICALS, INC., a Delaware corporation, <br><br> Defendant. | Case No. 2:25-cv-8609-HDV-AGR <br><br> **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** <br><br> **Hearing Date:** December 4, 2025 <br> **Hearing Time:** 10:00 A.M. <br> **Courtroom:** 5B <br> **Judge:** Hon. Hernán D. Vera |

# TABLE OF CONTENTS

**PAGE**

I.   FACTUAL BACKGROUND..............................................................................2

II.  ARGUMENT ...............................................................................................3

  A. This Court Can and Should Use Its Discretion to Deny Arrowhead's Motions
  and Should Not Stay the Case. ........................................................................3

  B. Arrowhead's Motion to Dismiss Should Be Denied............................................7

    1. First-to-File Does Not Apply to Parallel Suits Filed a Day Apart....................8

    2. First-to-File Does Not Apply to Arrowhead's Anticipatory Suit. ....................9

    3. Arrowhead Misstates the Legal Standard for Anticipatory Suits. ..................11

    4. The Convenience Factors Favor the Central District......................................14

      a.  Factors (1)–(3): The Conduct Giving Rise to this Dispute, The Parties
         Contacts and Ionis's Forum Preference All Weigh Heavily in Favor of
         this District. ......................................................................................14

      b.  Factor (4): Litigating in the Central District of California Would Be Far
         More Cost-Efficient. ..........................................................................17

      c.  Factor (5): Non-Party Witnesses Are Within this District's Subpoena
         Power But Not Delaware's..................................................................18

      d.  Factor (6): Documents are in California, Not Delaware.........................18

      e.  Factor (7): Court Congestion Favors the Central District.......................18

      f.  Factor (8): The Central District of California Has a Local Interest in This
         Case. ................................................................................................19

      g.  Factor (9): Preventing Forum-Shopping Favors the Central District. ......20

  C. Transfer is Not Warranted. ................................................................................20

III. CONCLUSION ..........................................................................................20

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF AUTHORITIES

## CASES

*Allen Med v. Mizuho Orthopedic*
  2022 WL 1046258 (D. Del. Apr. 7, 2022) ........................................................19

*Alltrade v. Uniweld Prods.*
  946 F.2d 622 (9th Cir. 1991) ....................................................4, 7, 8, 9

*Altair Instruments v. Telebrands*
  2019 WL 2022224 (C.D. Cal. Feb. 27, 2019) ........................................8

*AmSouth Bank v. Dale*
  386 F.3d 763 (6th Cir. 2004) ..............................................................14

*Atl. Marine v. U.S.D.C.*
  571 U.S. 49 (2013)................................................................................14

*Audionics v. AAMP*
  2013 WL 12129650 (C.D. Cal. Apr. 19, 2013) ..................................12

*Aurora v. Fellowes*
  2008 WL 709198 (C.D. Cal. Feb. 27, 2008) ......................................8, 9

*Brighton Collectibles v. Coldwater Creek*
  2006 WL 4117032 (S.D. Cal. Nov. 21, 2006)......................................6, 7

*Carroll Shelby Licensing v. Shelby*
  2008 WL 11338222 (C.D. Cal. Apr. 3, 2008) ......................................8

*Catch Curve v. Venali*
  2006 WL 4568799 (C.D. Cal. Feb. 27, 2006) ....................................14

*Communications Test Design v. Contec*
  952 F.3d 1356 (Fed. Cir. 2020) ..................................................10, 12

*Creative Nail v. Mycone Dental*
  2012 WL 2106212 (S.D. Cal. June 11, 2012) ......................................9

*Davox v. Digital Sys.*
  846 F. Supp. 144 (D. Mass. 1993)........................................................14

*Decker Coal v. Commonwealth Edison*
  805 F.2d 834 (9th Cir. 1986) ................................................................8

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Digital Basement v. Gordon*
  2015 WL 12030510 (N.D. Ga. June 17, 2015) .........................................5, 6, 7

*Elecs. for Imaging v. Coyle*
  394 F.3d 1341 (Fed. Cir. 2005) ....................................................................9, 10

*Enteral Products v. Meds Direct*
  2016 WL 9185156 (C.D. Cal. Apr. 28, 2016)........................................4, 5, 6, 14

*ESET v. Finjan*
  2016 WL 9526399 (S.D. Cal. Sept. 26, 2016) ...................................................9

*Gordon v. Digital Basement*
  2015 WL 13915248 (C.D. Cal. Apr. 1, 2015)..........................................5, 6, 14

*Green Planet v. International IP*
  2013 WL 12146119 (C.D. Cal. Nov. 25, 2013) ..............................................13

*Harbor Freight v. Champion Power*
  2025 WL 819046 (C.D. Cal. Feb. 13, 2025). ..................................................12

*HiTherm v. Victaulic*
  2022 WL 19239750 (C.D. Cal. July 7, 2022) ..................................................12

*In re Daimler Truck*
  2023 WL 2456069 (D. Del. Mar. 10, 2023) .......................................................6

*In re Genentech*
  566 F.3d 1338 (Fed. Cir. 2009) .......................................................................17

*In re Hoffman-La Roche*
  587 F.3d 1333 (Fed. Cir. 2009) .......................................................................19

*Jones v. GNC*
  211 F.3d 495 (9th Cir. 2000) ...........................................................................14

*Kerotest v. C-O-Two Fire*
  342 U.S. 180 (1952)............................................................................................4

*Kohn Law v. Auto Parts*
  787 F.3d 1237 (9th Cir. 2015) ...........................................................................9

*Mason v. Spring*
  2024 WL 5424385 (C.D. Cal. Nov. 27, 2024) ...................................................6

iv

*Meza v. Procter & Gamble*
　2023 WL 3267861 (C.D. Cal. Apr. 27, 2023)....................................................20

*Newthink v. Lenovo*
　2012 WL 6062084 (C.D. Cal. Dec. 4, 2012)...............................................17, 18

*No Cost Conference v. Winstream*
　940 F. Supp. 2d 1285 (S.D. Cal. 2013) ................................................................5

*Nortek v. Molnar*
　36 F. Supp. 2d 63 (D.R.I. 1999) ........................................................................14

*Optima v. Channel Clarity*
　2015 WL 12765540 (C.D. Cal. Feb. 11, 2015) ..................................................10

*Pacesetter v. Medtronic*
　678 F.2d 93 (9th Cir. 1982) .................................................................................6

*Pharma Holdings v. Meds Direct*
　2016 WL 11265601 (S.D. Fla. May 3, 2016)........................................................5

*Prohbtd Media v. VMR*
　2018 WL 6012224 (C.D. Cal. Nov. 13, 2018) ............................................11, 12

*Regents of UC v. Boston Sci.*
　2017 WL 2335543 (N.D. Cal. May 30, 2017).....................................................16

*Serco Services v. Kelley*
　51 F.3d 1037 (Fed. Cir. 1995) .....................................................................10, 12

*SMIC v. Innovative Foundry*
　473 F. Supp. 3d 1021 (N.D. Cal. 2020)................................................................9

*Smilecareclub v. Coast Dental*
　2015 WL 11582835 (S.D. Cal. Jan. 29, 2015) ..................................................10

*Synopsys v. Mentor Graphics*
　2013 WL 1365946 (N.D. Cal. Apr. 3, 2013).......................................................16

*TWD v. Grunt Style*
　2018 WL 9536737 (S.D. Cal. July 30, 2018)........................................................6

*Vanda Pharms. v. W.-Ward Pharms. Int'l*
　887 F.3d 1117 (Fed. Cir. 2018) ...................................................................15, 16

v

*Wyrgatsch v. Hasbro*
    2023 WL 9419156 (C.D. Cal. Dec. 1, 2023)......................................................10

*Xoxide v. Ford*
    448 F. Supp. 2d 1188 (C.D. Cal. 2006)......................................................10, 11

*Z-Line Designs v. Bell'O Int'l*
    218 F.R.D. 663 (N.D. Cal. 2003) ......................................................12

*Zinus v. Classic Brands*
    2019 WL 8226076 (C.D. Cal. Oct. 3, 2019) ......................................................16

*Zivokovic v. S. Cal. Edison*
    302 F.3d 1080 (9th Cir. 2002) ......................................................4

## STATUTES AND RULES

21 U.S.C. § 355(j)(5)(B)(iii)......................................................19

28 U.S.C. § 1391(b)(2) ......................................................13

28 U.S.C. § 1404(a) ......................................................20

Rule 45 ......................................................18

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1    It is hard to think of a more appropriate place for this dispute to be adjudicated

2 than this Court, the Central District of California.  This District is home to Defendant

3 Arrowhead, a company headquartered in Pasadena, where it is on the verge of

4 commercializing the infringing product.  And this District is a short drive from

5 Plaintiff Ionis's headquarters in nearby Carlsbad, California.  Although this is a dispute

6 between two southern California-based companies, Arrowhead has been taking great

7 pains to try to have this case litigated as far away as possible, across the country in

8 Delaware, where neither party has any facilities or anticipated witnesses.

9    Arrowhead is about to commercialize a product called "plozasiran" in a manner

10 that squarely infringes Ionis's patent.  Ionis's CEO reached out to Arrowhead in early

11 September to try to address this amicably but explained that if the parties did not make

12 progress, Ionis would sue for infringement on September 11th, here, in the Central

13 District of California.  ECF No. 1-2 (Sept. 3, 2025 Letter).  On September 5,

14 Arrowhead "acknowledge[d] receipt" of the letter and claimed to be "evaluating it."

15 ECF No. 1-3.  The next time Ionis heard from Arrowhead, it was when Arrowhead

16 filed a declaratory judgment action in the District of Delaware on September 10th, just

17 hours before it knew Ionis would sue in this District.  Ionis promptly filed this suit the

18 next day, September 11th, as promised, and moved to dismiss (or transfer)

19 Arrowhead's Delaware suit.

20    Arrowhead's lawsuit in Delaware is a textbook example of an "anticipatory suit"

21 filed for the purpose of forum-shopping.  Arrowhead does not want this Court to

22 decide this case, so it raced to the courthouse in Delaware to try to preempt Ionis's

23 lawsuit in this forum.  Arrowhead now asks this Court to dismiss Ionis's suit, despite

24 extensive contrary legal authority and serious practical considerations that weigh

25 against a California dispute being adjudicated in Delaware.

26    The law is clear: Arrowhead's declaratory judgment action is an anticipatory

27 suit and therefore it is not entitled to deference merely because it was filed first.

28 That essentially ends the inquiry because the timing of its Delaware suit is the basis for

1

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Arrowhead's argument for dismissal. There is no credible dispute that this case belongs in California. This District is Arrowhead's "home turf," is where the infringing acts took place, and is convenient for the likely witnesses from both parties. By contrast, neither company maintains a place of business in Delaware and no anticipated witnesses or documents reside there.

As an alternative to dismissal, Arrowhead asks this Court to stay this case while Ionis's motion to dismiss is pending in Delaware. But when the anticipatory filing exception to the first-to-file rule applies, as it clearly does here, this Court does not reward a race to the courthouse by staying the second-filed action. This Court can and should deny the motions to dismiss, transfer, and stay, and let the case proceed on schedule. This Court has ample tools at its disposal to ensure that this case can proceed apace without conflicting judgments.

The Central District of California is the proper forum for this case, and this Court should allow this suit to proceed without delay.

## I.      FACTUAL BACKGROUND

Ionis and Arrowhead are both pharmaceutical companies headquartered and primarily operating out of southern California. Declaration of Karen K. Horning, Ph.D. ("Horning Decl.") ¶4; Ex. A (Ionis 10-K) at 1; Ex. B (Arrowhead 10-K) at 1. Building off years of research, Ionis developed a breakthrough therapy called Tryngolza® to treat familial chylomicronemia syndrome ("FCS"), a disorder that leads to dangerously high triglyceride levels. As the first approved therapy for FCS, Tryngolza® inhibits the genetic material that encodes a protein called ApoCIII and improves the body's ability to break down triglycerides. In recognition of Ionis's invention, the U.S. Patent Office issued U.S. Patent No. 9,593,333 (the "'333 patent"), which covers the use of ApoCIII inhibitors to treat FCS.

Instead of paving its own path, Arrowhead copied Ionis's approach of using an ApoCIII inhibitor to treat FCS. Arrowhead now seeks regulatory approval for a product called plozasiran that, when used as prescribed, would infringe the '333 patent.

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

To protect its patent rights, Ionis's CEO sent a letter on September 3, 2025 notifying Arrowhead of its infringement and offering to discuss a potential resolution.  ECF No. 1-2.  The letter made clear, however, that "[u]nless [the parties] are able to resolve this dispute first, Ionis intends to seek relief for Arrowhead's blatant patent infringement by filing suit against Arrowhead in the United States District Court for the Central District of California on September 11, 2025 to enforce its patent rights." *Id.*

Arrowhead responded to Ionis's letter, stating that "[we] are evaluating it." ECF No. 1-3.  But Arrowhead never engaged in any dialogue with Ionis.  Instead, armed with the knowledge of Ionis's impending lawsuit, Arrowhead raced from one coast to the other and filed a lawsuit in the District of Delaware on September 10th—the day before Arrowhead faced suit in its own backyard.  *Arrowhead Pharmaceuticals v. Ionis Pharmaceuticals*, Case No. 1:25-cv-01130 (D. Del.).  The next day, Ionis filed this lawsuit, as it said it would, on Arrowhead's "home turf."

This is a dispute between two southern California-based companies.  Ionis and Arrowhead collectively employ hundreds of employees who live in or near the Central District of California.  ECF No. 20-2, ¶17; Horning Decl. ¶¶5-6; Ex. B at 31.  Both Arrowhead and Ionis's executive, clinical, commercial, financial, and regulatory teams are located in southern California.  ECF No. 20-1 ("Br.") at 12; Exs. C-J; Ex. M; Horning Decl. ¶4.  And both Ionis and Arrowhead have identified relevant non-party witnesses who can be compelled to testify in California.  Exs. U-V; ECF No. 20-2, ¶16.  By contrast, neither company has any physical locations or relevant documents in Delaware, neither party has identified any witnesses within the District of Delaware's subpoena power, and Arrowhead admits that none of the conduct that gave rise to this action occurred in Delaware.  *See* ECF No. 20-2, ¶¶6-16; Br. 12.

## II.   ARGUMENT

### A.   This Court Can and Should Use Its Discretion to Deny Arrowhead's Motions and Should Not Stay the Case.

Contrary to Arrowhead's suggestion, the fact that a motion to dismiss

3

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Arrowhead's anticipatory suit is pending in Delaware does not preclude this Court from denying Arrowhead's motion to dismiss and finding that the Central District of California is the proper venue for this dispute. But even if this Court were to hold Arrowhead's motions to dismiss and transfer in abeyance pending the Delaware Court's decision, this Court should still permit discovery to proceed rather than granting a stay.

The law is clear that "an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts" when resolving first-to-file issues. *Kerotest v. C-O-Two Fire*, 342 U.S. 180, 183-84 (1952). "Wise judicial administration . . . does not counsel rigid mechanical solution of such problems," as the "factors relevant . . . are equitable in nature." *Id.* at 183. As Arrowhead's authority confirms, "district court judges can, in the exercise of their discretion, dispense with the first-filed principle for reasons of equity." *Alltrade v. Uniweld Prods.*, 946 F.2d 622, 628 (9th Cir. 1991). District courts also receive "broad discretion in supervising the pretrial phase of litigation," which includes matters related to scheduling. *Zivokovic v. S. Cal. Edison*, 302 F.3d 1080, 1087 (9th Cir. 2002).

It is within this Court's discretion to deny Arrowhead's motions to dismiss and transfer without awaiting the Delaware Court's decision because, as set forth in Section II.B.2, Arrowhead's Delaware suit is plainly anticipatory. This Court took the same course of action in *Enteral Products v. Meds Direct*, where the Court declined to dismiss the California suit in favor of the first-filed suit in Florida. 2016 WL 9185156, at *3 (C.D. Cal. Apr. 28, 2016). In *Enteral*, this Court concluded that the declaratory judgment plaintiff's "awareness of an imminent lawsuit, and [its] quick filing of the [declaratory judgment] action . . . strongly suggest that [it] filed an anticipatory lawsuit with the central purpose of forum shopping." *Id.* The Court therefore declined to "give such a suit the deference ordinarily reserved for First-Filed actions." *Id.* Instead, after this Court permitted the suit to proceed, the Florida Court subsequently dismissed the corresponding first-filed anticipatory suit. *Pharma Holdings v. Meds Direct*, 2016

WL 11265601, at *3 (S.D. Fla. May 3, 2016).  Similarly, in *Digital Basement v. Gordon*, 2015 WL 12030510, at *7 (N.D. Ga. June 17, 2015), the Georgia Court dismissed a first-filed anticipatory suit after this Court declined to stay the second-filed suit in *Gordon v. Digital Basement*, 2015 WL 13915248, at *2 (C.D. Cal. Apr. 1, 2015) ("*Gordon*").  In short, this Court has proceeded in this manner in the past and there was no issue of conflicting judgments.  Once this Court denies Arrowhead's motion to dismiss, the Delaware court will presumably dismiss Arrowhead's declaratory judgment suit, as other courts have done in similar circumstances.

This Court should also not seriously entertain Arrowhead's motion for a stay. Granting Arrowhead's motion for a stay would improperly delay proceedings in the appropriate forum and allow Arrowhead to gain an advantage from its procedural gamesmanship.  And there is no requirement that this Court do so.  In fact, when the "anticipatory filing exception to the first to file rule applies," this Court has "disagree[d]" that the "principles of comity" require rewarding a race to the courthouse, and it has accordingly denied motions to stay the second-filed action. *Gordon*, 2015 WL 13915248, at *2, 5.

This Court and others within this Circuit have allowed second-filed cases to proceed without delay when the circumstances make clear that granting a stay would be inequitable, such as when the first-filed suit was filed in anticipation of an imminent lawsuit.  *See, e.g.*, *Gordon*, 2015 WL 13915248, at *2-3; *No Cost Conference v. Winstream*, 940 F. Supp. 2d 1285, 1307 (S.D. Cal. 2013) ("[E]ven if the Court were to find that the New York action was filed first, the Court would exercise its discretion and would not stay this matter under the circumstances of this case.").  In *Gordon*, as here, the allegedly infringing party filed a suit seeking declaratory relief "after receiving specific and concrete indications from Plaintiff that a suit was imminent." 2015 WL 13915248 at *3.  This Court observed that staying the case "under these circumstances 'would thwart settlement [and] encourage intellectual property holders to file suit rather than communicate with an alleged infringer." *Id.* (internal citations

5

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

omitted).  The Court therefore denied defendant's motion to stay the proceedings and allowed the proper action to proceed in its ordinary course.  *Id.* at *5.[1]

Granting a stay here would also upset the general rule that a pending motion to dismiss does not pause discovery, *see Mason v. Spring*, 2024 WL 5424385, at *1 (C.D. Cal. Nov. 27, 2024), and would "unreasonably penalize" Ionis for contacting Arrowhead before filing suit, *Enteral*, 2016 WL 9185156, at *4.  A stay rewards Arrowhead with additional time for its jurisdictional gamesmanship, hinders Ionis from obtaining the relief to which it is entitled, and, if the Delaware case proceeds while this case is stayed, could skew the Delaware court's transfer analysis towards the improper forum.  *See In re Daimler Truck*, 2023 WL 2456069, at *2 (D. Del. Mar. 10, 2023).  Therefore, this Court has ample reason to deny Arrowhead's motion for a stay.

At best, Arrowhead's case law identifies occasions where courts have found that the interest in judicial comity outweighed other considerations and warranted a stay. *See* Br. 5.  But as *Gordon* and *Enteral* demonstrate, there is no categorical rule that binds this Court, and the interest in preventing "bad faith, anticipatory suit, and forum shopping" is a well-established reason to deny a stay.  *Enteral*, 2016 WL 9185156, at *2.  Moreover, judicial comity can be preserved in this case without rewarding Arrowhead's gamesmanship.  The Court has other tools to ensure that this case can proceed without conflicting judgments, such as denying Arrowhead's motion to dismiss without prejudice or holding its motion to dismiss in abeyance.  For example, in *Brighton Collectibles v. Coldwater Creek,* the Court denied a motion to dismiss, stay, or transfer the second-filed action because the anticipatory nature of the first-filed action created an equitable exception to the first-to-file rule.  2006 WL 4117032, at *3-4 (S.D. Cal. Nov. 21, 2006).  However, it noted that if "the motion to dismiss is denied in the [first-filed] suit, such that two suits regarding similar issues are pending in

---

[1] Arrowhead's assertion that it is improper for the second-filed court to consider the convenience factors has been expressly rejected by the Ninth Circuit.  *See Pacesetter v. Medtronic*, 678 F.2d 93, 96 (9th Cir. 1982); *see also TWD v. Grunt Style*, 2018 WL 9536737, at *3 (S.D. Cal. July 30, 2018) (second-filed court can engage in convenience analysis where first-filed suit is anticipatory).

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

separate districts, this Court will be receptive to reconsidering a motion to transfer this suit." *Id.* at *4. Accordingly, the court denied the motion to transfer without prejudice. This approach is equally workable in the present case: it allows Ionis's properly-filed suit to move forward, while implicating none of the comity issues or risks of irreconcilable rulings that Arrowhead raises. Alternately, this Court may also coordinate directly with the Delaware Court to avoid duplicative activity. *See* Manual for Complex Litigation, Fourth, § 20.14 ("[J]udges can coordinate proceedings in their respective courts to avoid or minimize duplicative activity and conflicts.").

In short, this Court can and should exercise its discretion to deny Arrowhead's motion to dismiss and its motion to transfer. To the extent this Court elects to hold these in abeyance, there is no doubt that on these facts the Court should deny Arrowhead's motion to stay and should let this case proceed on schedule.

### B.    Arrowhead's Motion to Dismiss Should Be Denied.

The law is clear that the first-to-file rule does not apply to situations like this, where a party files an anticipatory declaratory judgment case one day before it knows it will be sued elsewhere. This Court can and should deny Arrowhead's motion to dismiss.[2] Arrowhead does not dispute that both parties' headquarters and many key witnesses are located within or close to the Central District. Meanwhile, Arrowhead fails to identify *any* connection between this dispute and Delaware and fails to provide *any* practical reason why this case should be litigated in Delaware, let alone "a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal v. Commonwealth Edison*, 805 F.2d 834, 843 (9th Cir. 1986). The weight of authority and common-sense dictate that this dispute be resolved in California.

---

[2] Arrowhead's request for this case to be dismissed also contravenes established precedent. Where, as here, the first-filed suit pending in a different district "presents a likelihood of dismissal," the court may stay the second-filed suit, but dismissing altogether would be improper given the possibility that the first-filed suit may also be dismissed. *Alltrade*, 946 F.2d at 629 (9th Cir. 1991).

7

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1    **1.    First-to-File Does Not Apply to Parallel Suits Filed a Day Apart.**

2    "The most basic aspect of the first-to-file rule is that it is discretionary."

3    *Alltrade*, 946 F.2d at 628.  And this Court has found that "the first-filed rule is of no

4    utility where competing cases are filed within a short interval of one another," like

5    when parties file competing suits one day apart.  *Carroll Shelby Licensing v. Shelby*,

6    2008 WL 11338222, at *1, 3 n.2 (C.D. Cal. Apr. 3, 2008).  "The first-filed rule is a

7    useful tool for conserving judicial resources, as it tips the scales in favor of the action

8    *in which more efforts have been expended and more progress made*, while dissuading

9    parties from using the threat of suit as a tool of harassment."  *Aurora v. Fellowes*, 2008

10   WL 709198, at *1 (C.D. Cal. Feb. 27, 2008) (emphasis added).  Rigidly applying the

11   first-to-file rule when competing cases are filed in close proximity "would invoke none

12   of the merits of the first-filed rule, while promoting the sort of race to the courthouse

13   that is the worst feature of the rule."  *Id.*

14        This case is precisely the situation in which applying the first-to-file rule would

15   only reward the type of race to the courthouse that courts consistently discourage.

16   Ionis informed Arrowhead that it would file suit on September 11 in this Court, and

17   Arrowhead responded by racing to file a declaratory judgment complaint on the *day*

18   *before*.  But because the two suits were filed less than one day apart, in neither case has

19   there been "more efforts . . . expended" or "more progress made," *Aurora*, 2008 WL

20   709198, at *1.  The rationale for applying the first-to-file rule has little force here.

21        The cases that Arrowhead relies on only highlight why the rule should not apply

22   here.  In *Altair Instruments v. Telebrands*, the first-filed suit was *one month ahead* of

23   the later suit in this Court.  2019 WL 2022224, at *2 (C.D. Cal. Feb. 27, 2019).  Even

24   then, the Court observed that the first-to-file rule would *not* have applied had there been

25   a "specific and concrete indication that [the patentee] intended to file suit . . .

26   imminently."  *Id.* at *3.  The other cases that Arrowhead cite involve parallel

27   litigations that are even farther apart in time.  *Kohn Law v. Auto Parts*, 787 F.3d 1237,

28   1240-41 (9th Cir. 2015) (suits filed *ten months* apart); *SMIC v. Innovative Foundry*,

473 F. Supp. 3d 1021, 1024 (N.D. Cal. 2020) (suits filed three months apart).[3]

In addition, where there are competing patent infringement lawsuits, this Court may give weight "in favor of the infringement action" even if the declaratory judgment action was filed first. *Aurora*, 2008 WL 709198, at *1. This makes sense, as deferring to a first-filed declaratory judgment would "serve no useful purpose" when the co-pending infringement action would "effectively settle the legal claims at issue." *ESET v. Finjan*, 2016 WL 9526399, at *4 (S.D. Cal. Sept. 26, 2016); *see also Creative Nail v. Mycone Dental*, 2012 WL 2106212, at *3 (S.D. Cal. June 11, 2012) (same). That is the situation here. The two cases are mirror images. Arrowhead's case is no broader than Ionis's, and its only purpose is attempting to defeat liability by preventing this Court from hearing the case.

### 2.    First-to-File Does Not Apply to Arrowhead's Anticipatory Suit.

Arrowhead's Delaware suit is plainly an anticipatory lawsuit and that is a separate and independent reason why Arrowhead is not entitled to benefit from the first-to-file rule. Arrowhead did not file its declaratory judgment action in Delaware to avoid "uncertainty and delay." Br. 8. It knew that Ionis was going to file its lawsuit a few hours later because Ionis had disclosed the precise date and venue where it would file its complaint. ECF No. 1-2 at 2. There was no ambiguity about "whether there will be legal proceedings at all," and no risk that the alleged infringer faced a "looming specter of litigation" that could extend indefinitely. *Elecs. for Imaging v. Coyle*, 394 F.3d 1341, 1346-47 (Fed. Cir. 2005). Quite simply, Arrowhead raced to file its declaratory judgment action before Ionis to try to avert Ionis's choice of forum. This fact pattern is not new, and in these circumstances, courts do *not* defer to the anticipatory suit merely because it was filed first.

A lawsuit is anticipatory where, like here, the "plaintiff in the first-filed action

---

[3] While the two suits in *Alltrade* were filed one day apart, that decision merely stands for the proposition that applying the first-to-file rule was not an abuse of discretion. 946 F.2d at 628.

filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent." *Xoxide v. Ford*, 448 F. Supp. 2d 1188, 1192 (C.D. Cal. 2006).  The Federal Circuit has held that it is appropriate to dismiss such anticipatory suits.  In *Communications Test Design v. Contec*, the Federal Circuit found it "clear that CTDI's [declaratory judgment action] was anticipatory" because the patentee "told CTDI that it would file suit if CTDI did not confirm by September 18, 2018, that it was willing to discuss the terms of a potential license."  952 F.3d 1356, 1363 (Fed. Cir. 2020).  It affirmed the dismissal of the anticipatory case.  *Id.* at 1365.  The Federal Circuit did the same in *Serco Services v. Kelley*, affirming the dismissal of Serco's declaratory judgment action when it was filed after Serco received a letter from the patentee that stated: "Unless you confirm to us by September 20, 1993 that Serco will discontinue the manufacture or sale of any infringing device, [patentee] will commence a law suit to enjoin further infringement in addition to seeking other available remedies."  51 F.3d 1037, 1038, 1040 (Fed. Cir. 1995).

Consistent with the Federal Circuit's guidance, this Court has routinely found that "where the declaratory judgment action is filed in anticipation of an infringement action, the infringement action should proceed, even when filed later."  *Xoxide*, 448 F. Supp. 2d at 1193 (cleaned up).  In *Optima v. Channel Clarity*, Optima sent a letter stating that if "Channel Clarity did not agree to modify its website . . . one week after the letter was sent—Optima would 'have no choice but to enforce' its rights."  2015 WL 12765540, at *3 (C.D. Cal. Feb. 11, 2015).  The Court found that a declaratory judgment action filed in response to such a letter was anticipatory.  *Id.*  Likewise, in *Smilecareclub v. Coast Dental*, the Court found that "where as here a declaratory judgment action has been triggered by a cease and desist letter, equity militates in favor of allowing the second-filed action to proceed to judgment rather than the first."  2015 WL 11582835, at *2 (S.D. Cal. Jan. 29, 2015).  *See also Wyrgatsch v. Hasbro*, 2023 WL 9419156, at *4 (C.D. Cal. Dec. 1, 2023) (suit is anticipatory when filed in response to cease and desist letter); *Prohbtd Media v. VMR*, 2018 WL 6012224, at *6

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

(C.D. Cal. Nov. 13, 2018) ("threaten[ing] to file an infringement action by a specific date" is one example of a "specific, concrete indication[] that a suit by defendant is imminent.").

Arrowhead does not and cannot dispute that it filed suit on receipt of specific, concrete indications that Ionis's infringement suit was imminent.  Ionis sent a letter in which it identified the specific time and place that it would file suit in no uncertain terms—Thursday, September 11, 2025 in the Central District of California. Arrowhead's decision to file a declaratory judgment action one day before was transparently made "upon receipt of specific, concrete indications that suit by [Ionis] was imminent." *Prohbtd Media*, 2018 WL 6012224, at *5.  Indeed, Arrowhead all but concedes that on the very first page of its brief, stating that "***[f]aced with the threat of an imminent suit***, Arrowhead . . . sought judicial clarity by filing the Delaware Action." Br. 1 (emphasis added).  Under such circumstances, this Court should not defer to Arrowhead's anticipatory suit in Delaware.

### 3.     Arrowhead Misstates the Legal Standard for Anticipatory Suits.

Arrowhead's Delaware suit fits like a glove within the standard for anticipatory suits, so Arrowhead tries to invent a standard in which anticipatory suits are only improper "when parties use them as a vehicle for forum-shopping or other improper purposes."  Br. 8.  There is no such requirement.  Forum shopping and anticipatory suit are *independent exceptions* to the first-to-file rule.  *Xoxide*, 448 F. Supp. 2d at 1192 (first-filed suit should not proceed "when the filing of the first suit evidences *bad faith, anticipatory suit, or forum shopping*") (emphasis in original). There is no legal basis for Arrowhead's attempt to heighten the standard by conflating these exceptions. Moreover, Arrowhead's position contravenes Federal Circuit precedent.  In *Serco*, the Federal Circuit expressly declined to limit anticipatory suits to only those "motivated by forum shopping or those filed in derogation of an existing agreement to refrain from

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

filing suit." 51 F.3d at 1039. Arrowhead ignores this binding precedent entirely.[4]

Arrowhead's cases do not support a contrary result. Arrowhead cites *HiTherm v. Victaulic* for several factors that courts may consider in determining whether a suit is anticipatory, but Arrowhead omits that it also states "the *most important consideration* is whether the plaintiff in the first suit jumped ahead *once the defendant indicated an intent to sue and set a reasonably firm deadline for pre-filing resolution*." 2022 WL 19239750, at *2 (C.D. Cal. July 7, 2022) (emphasis added). The Court there found the first-filed suit not anticipatory because—unlike Ionis—HiTherm "did not set a firm deadline for settlement discussions" and waited months to file suit after threatening litigation. *Id.* at *4. By contrast, Ionis set a firm deadline in its letter to Arrowhead and followed through to file suit immediately.

The Court in *Harbor Freight v. Champion Power*, like other courts, also held that a "suit is 'anticipatory' . . . if the plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that suit by the defendant was imminent." 2025 WL 819046, at *3 (C.D. Cal. Feb. 13, 2025). Applying this, the Court found that the patentee's months-long delay in filing suit and offer to license meant the threat of suit was no longer "imminent." *Id.* Again, that was not the situation here. Nor do any of the other cases that Arrowhead cites impose a separate requirement to show "forum shopping or other improper purpose" for anticipatory suits. *Audionics v. AAMP,* 2013 WL 12129650, at *6 (C.D. Cal. Apr. 19, 2013) (suit was anticipatory where patentee "proffered evidence that it gave 'specific, concrete indications that a suit . . . was imminent'"); *Z-Line Designs v. Bell'O Int'l*, 218 F.R.D. 663, 665 (N.D. Cal. 2003) (second-filed action should proceed to judgment when first-filed declaratory judgment action was triggered by a cease and desist letter).

---

[4] In its Delaware briefing, Arrowhead criticized *Serco* as predating the *Contec* framework. Ex. Z at 7 n.3. But the Federal Circuit in *Contec* did not abrogate *Serco*—it cited it approvingly. 952 F.3d at 1362; Ex. AA at 2. *Contec* also explains that a suit is anticipatory if it was filed "in anticipation of [an] impending infringement suit," irrespective of whether there was a "nefarious motive" to interfere with negotiations. 952 F.3d at 1363.

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1    Not only does Arrowhead misstate the law, but its assertion that it "did not

2    engage in forum-shopping when it filed the Delaware Action" is also not credible.

3    Arrowhead fails to articulate *any* practical reason for selecting Delaware, where there

4    are no witnesses, facilities or any other connections to the dispute.  Instead of filing its

5    complaint in Delaware, Arrowhead could have filed a declaratory judgment action in

6    the Central or Southern Districts of California, either of which would have been more

7    practical.[5]  On these facts, the Court can reasonably infer that Arrowhead engaged in

8    forum shopping by filing in Delaware.

9    Arrowhead's suggestion that anticipatory suits are only improper when they

10    "'short-circuit' ongoing negotiations" is also legally erroneous.  Br. 10.  In *Green*

11    *Planet v. International IP*, this Court found that a declaratory judgment suit filed in

12    response to a cease-and-desist letter is anticipatory even if the parties never engaged in

13    any negotiation.  2013 WL 12146119, at *4 (C.D. Cal. Nov. 25, 2013).  There, the

14    trademark holder sent a letter stating that it would file suit unless the infringing activity

15    stopped by a specific date.  *Id.*  But "[i]nstead of negotiating or even contacting" the

16    trademark holder, the alleged infringer filed a declaratory judgment one day before the

17    deadline.  *Id.*  On these facts, this Court held that the declaratory judgment action was

18    anticipatory.  *Id.*  The facts here parallel those in *Green Planet,* and Arrowhead's suit

19    is anticipatory even in the absence of ongoing negotiations.

20    Arrowhead's argument that the parties were not engaged in ongoing settlement

21    discussions also misses the point.  Ionis reached out to Arrowhead to try to initiate

22    such discussions.  ECF No. 1-2.  If patentees cannot even try to attempt settlement

23    discussions without risking the loss of their desired forum, even where they give a

24    specific, concrete indication that a suit is imminent, then potential plaintiffs would be

25    forced to "file before approaching defendants for settlement negotiations, under pain of

26

27    [5] Contrary to Arrowhead's assertion, the Central District would have been a proper
venue for Arrowhead's declaratory judgment action because it is "a judicial district in

28    which a substantial part of the events or omissions giving rise to the claim occurred."
28 U.S.C. § 1391(b)(2).  *See infra* §II.B.4.a.

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

a declaratory suit." *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004). The Declaratory Judgment Act was not intended to promote such counter-productive behavior. *Nortek v. Molnar*, 36 F. Supp. 2d 63, 70 (D.R.I. 1999) (courts should not reward conduct that deters negotiations outside the courthouse); *see also Davox v. Digital Sys.*, 846 F. Supp. 144, 148 (D. Mass. 1993) (same).

### 4. The Convenience Factors Favor the Central District.

Where, as here, the first-filed action "evidences bad faith, anticipatory filing, or forum shopping," this Court has found the first-to-file rule inapplicable, allowed the second-filed case to proceed, and denied motions to dismiss, transfer, or stay the second-filed case. *Enteral*, 2016 WL 9185156, at *2. In other words, once the Court determines that the first-to-file rule is inapplicable, the result is clear: the Court should allow this case to proceed. *Id.* (denying motion to dismiss or stay second-filed action without considering convenience factors); *Gordon*, 2015 WL 13915248, at *4-5 (same); *supra*, Section II.A.

Nevertheless, the convenience factors underscore why this case belongs in the Central District of California. *See Jones v. GNC*, 211 F.3d 495, 498-99 (9th Cir. 2000) (listing factors 1-6); *Atl. Marine v. U.S.D.C.*, 571 U.S. 49, 62 n.6, 65 (2013) (listing additional factors 7-9). Each of these factors favor the Central District.

### a. Factors (1)–(3): The Conduct Giving Rise to this Dispute, The Parties Contacts and Ionis's Forum Preference All Weigh Heavily in Favor of this District.

Arrowhead acknowledges the rule that "[s]ubstantial weight is accorded to the plaintiff's choice of forum," *Catch Curve v. Venali*, 2006 WL 4568799, at *2 (C.D. Cal. Feb. 27, 2006), but argues that an exception should be made because "this forum is not substantially connected to the subject matter of the litigation," Br. 12. Arrowhead's argument that this District is "not substantially connected to the subject matter of the litigation" is, in a word, meritless.

The patent-in-suit covers a method of treating FCS, and Ionis alleges that

14

Arrowhead will induce physicians to infringe the claimed method through the sale of
plozasiran. Induced infringement occurs "where there is evidence of active steps taken
to encourage direct infringement, which can in turn be found in advertising an
infringing use or instructing how to engage in an infringing use." *Vanda Pharms. v.
W.-Ward Pharms. Int'l*, 887 F.3d 1117, 1129 (Fed. Cir. 2018) (cleaned up). Thus,
Arrowhead's marketing and sale of plozasiran to treat patients with FCS constitute the
infringing activities in this case. And Arrowhead's conduct relating to that
infringement takes place at Arrowhead's headquarters in Pasadena, where
Arrowhead's executives decided to seek regulatory approval for plozasiran, as well as
where its commercialization and marketing activities are based. Exs. C-J, M. Indeed,
Arrowhead announced its decisions to investigate and market plozasiran for the
treatment of FCS from its Pasadena headquarters. Exs. K-L. Ionis's claim also carries
a significant damages component: a central issue will be ascertaining Ionis's lost
profits from Arrowhead's promotion of its infringing drug, and those damages could
be enhanced if Arrowhead's decisions were willful. The Arrowhead executives who
would have been responsible for these decisions are located in Pasadena. Exs. C-J.

There is no dispute that Arrowhead's Executive Team and its Clinical,
Commercial, Finance, Medical Affairs, and Regulatory teams are all located at its
Pasadena headquarters. Exs. C-J, M; Br. 12. Arrowhead is, as we speak, hiring
managers and directors to work in Pasadena for its imminent launch of plozasiran. For
example, Arrowhead is now hiring a Pasadena-based manager to "play a pivotal role in
the commercial launch of Arrowhead's leading investigational cardiometabolic
medicine – Plozasiran." Ex. N; *see also* Ex. O (seeking a Pasadena-based "Director of
Corporate Communications" to "support key initiatives, including the launch of
plozasiran"). Arrowhead does not—and cannot—dispute that the executive,
development, marketing, and sales decisions are made in the Central District of
California. It admits that its "clinical and commercial functions are managed by
employees based at Arrowhead's headquarters in Pasadena." Br. 12.

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1   Accordingly, this dispute is closely connected to the Central District of

2   California.  Arrowhead's own authority demonstrates that the "center of the accused

3   activity" in this case is in this District, where Arrowhead "developed, . . . marketed,

4   and made sales decisions concerning [plozasiran]."  *Synopsys v. Mentor Graphics*,

5   2013 WL 1365946, at *5 (N.D. Cal. Apr. 3, 2013).  Arrowhead attempts to redirect the

6   Court's focus to the details of plozasiran supply chain, arguing that it is "anchored in

7   Wisconsin."  Br. 12.  But that is beside the point.  For a start, how this supports hearing

8   this case in *Delaware* is left as an exercise for the confused reader.  Moreover, the

9   patent at issue in this case is directed to a method of treatment—not the product's

10  manufacture.  ECF No. 1-1.  Therefore, the development, marketing, and sales

11  decisions are particularly relevant.  *See Regents of UC v. Boston Sci*., 2017 WL

12  2335543, at *3 (N.D. Cal. May 30, 2017); *Vanda*, 887 F.3d at 1129.  Further, where, as

13  here, the infringing party "runs the operation of its business related to the accused

14  products" out of its headquarters, this Court has concluded that the headquarters is the

15  "'center of gravity' of the case." *Zinus v. Classic Brands*, 2019 WL 8226076, at *3

16  (C.D. Cal. Oct. 3, 2019).  This is true even when the infringer "operates a 'large

17  warehouse, factory, and office facility'" for the infringing product in another district.

18  *Id.* at *3-4 (center of gravity based on where "information processing behind the

19  product" and "marketing, development, and sales" occur, rather than "the physical

20  whereabouts of the product").  That this case may have some connection to Wisconsin

21  does not make its connection to the Central District any less substantial.  Notably,

22  Arrowhead cannot identify *anything* relating Ionis's cause of action to *Delaware*.

23  Ionis's contacts also favor keeping this case in the Central District.  While

24  Ionis's corporate headquarters and its research and development facility are in

25  Carlsbad, California, which is in the Southern District of California, it is driving

26  distance from this Court.  Ex. P (route from Ionis's headquarters to this Court).  Ionis's

27  offices are so close to the Central District that some of Ionis's employees live in

28  counties within the district and commute to its Carlsbad headquarters.  Horning Decl.

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

¶6.  And like Arrowhead, Ionis has no physical locations, documents, or witnesses in Delaware.  *Id*., ¶¶4, 7.

Factors 1, 2 and 3 all weigh heavily in favor of this District given Arrowhead's and Ionis's contacts with this District, the District's close connection to this case, and Ionis's choice of forum, which is entitled to substantial weight.

### b.    Factor (4): Litigating in the Central District of California Would Be Far More Cost-Efficient.

Litigating here would be unquestionably more cost-effective and convenient for both parties' witnesses.  *See Newthink v. Lenovo*, 2012 WL 6062084, at *1 (C.D. Cal. Dec. 4, 2012) ("[T]he most important factors in [the] transfer analysis are the convenience and cost of attendance of witnesses.").  Ionis's headquarters and core business units, including drug discovery, clinical development, commercial operations, financial planning and analysis, and regulatory affairs, are all located in nearby Carlsbad.  Horning Decl. ¶4.  A majority of Ionis's employees reside in California, and two of the three named inventors on the '333 patent live in the San Diego area. Horning Decl. ¶5, Exs. Q-R.   As discussed, Arrowhead's executives, as well as its commercial, clinical, financial, regulatory, and medical affairs teams, are located in Pasadena.  Exs. C-J, M; Br. 12.  These individuals likely have knowledge of Arrowhead's decision-making, regulatory submissions (including its proposed label), and commercial activities, which form the basis for Ionis's claims.  Other relevant Arrowhead witnesses, including its Chief Operating Officer and its Vice President of Clinical Operations, are also in California.  Exs. S-T.  Adjudicating this case here would therefore save the parties travel time, logistical inconvenience, and expenses. *See In re Genentech*, 566 F.3d 1338, 1343-45 (Fed. Cir. 2009) ("[T]he parties' convenience factor favored [the Northern District of California], and not only slightly," when the parties identified numerous witnesses within the district, and "additional witnesses . . . outside of the . . . venue but within California.").

As to any witnesses in Wisconsin or Michigan, Arrowhead fails to provide a

---

17

compelling reason why it would be cheaper or easier for them to travel to Delaware than California.  Rather, "it will be more convenient for them to go to [Arrowhead's] headquarters (and possibly attend to their regular duties while at a corporate hub) than to be marooned" in a district where Arrowhead has no offices.  *Newthink*, 2012 WL 6062084, at *1.  The cost and convenience of witness attendance strongly favors litigating this case here.

> c.    **Factor (5): Non-Party Witnesses Are Within this District's Subpoena Power But Not Delaware's.**

Ionis has identified two relevant non-party witnesses in California who are co-authors of the clinical study of plozasiran for FCS patients.  Exs. U-W.  Arrowhead also acknowledges that it has "former employees with knowledge of plozasiran who reside in San Diego."  ECF No. 20-2, ¶16.  Under Rule 45(c)(1)(B)(ii), individuals residing anywhere within the state of California can be compelled to testify in the Central District of California, but not in Delaware.  By contrast, Arrowhead identifies *no* non-party witnesses within Delaware's subpoena power.  ECF No. 20-2, ¶16 (witnesses in Charleston, SC are more than 100 miles from the Delaware courthouse); Fed. R. Civ. P. 45(c).  This factor also favors hearing the case in the Central District.

> d.    **Factor (6): Documents are in California, Not Delaware.**

Arrowhead acknowledges that it has no relevant documents in Delaware, whereas it has "company records relevant to plozasiran" in Pasadena and San Diego.  ECF No. 20-2 at ¶18.  Ionis's relevant records are also located nearby in Carlsbad.  Horning Decl. at ¶7.  "[E]ven if these documents could be produced electronically, the cost of litigation will still likely be less if the case was venued in the forum where the documents are located."  *Newthink*, 2012 WL 6062084, at *2.  This factor also favors the Central District.

> e.    **Factor (7): Court Congestion Favors the Central District.**

The Federal Judicial Caseload Statistics show that this action is likely to be resolved faster in the Central District of California than in Delaware.  The median time

from filing to trial in the Central District is 26.5 months, compared to 35 months in Delaware. Ex. X.[6] This Court is also less backlogged: only 7.3% of cases are over three years old, compared to 17.6% in Delaware. Ex. X. The Central District also has fewer pending cases per judgeship than the District of Delaware. Ex. X. These figures reflect court congestion more accurately than Arrowhead's "weighted filings per judgeship" statistic, which only measure the number of cases filed, rather than the time to resolution. *See Allen Med v. Mizuho Orthopedic*, 2022 WL 1046258, at *3 (D. Del. Apr. 7, 2022). This factor also favors the Central District.

> **f.      Factor (8): The Central District of California Has a Local Interest in This Case.**

The Federal Circuit has recognized that districts may have a local interest in patent litigation relating to activities in that district. "[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *In re Hoffman-La Roche*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). When "the cause of action calls into question the work and reputation of several individuals residing in or near [a] district and who presumably conduct business in that community," the district's "local interest in [the] case [is] strong." *Id.* at 1336. As explained above, *see supra* Section II.B.4.a-c, the Central District of California has a significant local connection to this case, while Arrowhead fails to identify any "significant connections between [Delaware] and the events that gave rise to [this] suit." *Hoffman-La Roche*, 587 F.3d at 1338. This factor strongly favors the Central District.

---

[6] In its Delaware briefing, Arrowhead argued that patent cases reach trial faster in Delaware than in the Central District. Ex. Z at 15. That statistic was misleading. *See* Ex. AA at 9. The District of Delaware has a high volume of Hatch-Waxman cases, which skew the average time-to-trial for patent suits downward because of their 30-month deadline, which is not applicable here. *See 2024 Hatch-Waxman Year in Review*, Nat'l Law Review (Jan. 15, 2025), https://natlawreview.com/article/2024-hatch-waxman-year-review; 21 U.S.C. § 355(j)(5)(B)(iii).

19

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1                     **g.     Factor (9): Preventing Forum-Shopping Favors the**

2                          **Central District.**

3       Arrowhead's transparent effort to "pursue[] litigation outside [its] home district"

4 creates an inference of forum shopping, and the "interests of justice" require that

5 Arrowhead not be rewarded for its gamesmanship. *Meza v. Procter & Gamble*, 2023

6 WL 3267861, at *3 (C.D. Cal. Apr. 27, 2023).

7                                   * * *

8       The convenience factors all point to this District.  There is no practical reason

9 why this case should be heard in Delaware.

10     **C.     Transfer is Not Warranted.**

11      As discussed above, *none* of the convenience factors in the 28 U.S.C. § 1404(a)

12 analysis favor hearing this case in Delaware, and most, if not all, strongly favor this

13 forum.

14       Arrowhead's argument that this action should be consolidated in Delaware in

15 the interest of judicial economy is equally unpersuasive.  There is a strong likelihood

16 that the District Court of Delaware will grant Ionis's motion to dismiss or transfer

17 Arrowhead's declaratory action to this District because Arrowhead's suit is clearly

18 anticipatory and is not supported by the convenience factors.  *Supra,* § I.A; *see* Exs. Y-

19 AA (Delaware briefing).

20 **III.   CONCLUSION**

21       This Court should deny Arrowhead's motion and allow the case to proceed in

22 this District.

23

24

25

26

27

28

Dated: November 10, 2025

Respectfully submitted,

/s/ *Matthew Donald Umhofer*

**UMHOFER, MITCHELL & KING LLP**
Matthew Donald Umhofer
Margaret E. Dayton

*Attorneys for Plaintiff Ionis Pharmaceuticals*

Of Counsel:
**WILLIAMS & CONNOLLY LLP**
Jessamyn Berniker (*pro hac vice*)
Thomas S. Fletcher (SBN 262693)
Kathryn S. Kayali (*pro hac vice*)
Michael X. Liu (*pro hac vice*)
680 Maine Avenue, SW
Washington, DC 20024
(202) 434-5000
jberniker@wc.com
tfletcher@wc.com
kkayali@wc.com
mliu@wc.com

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,960 words, which complies with the word limit of L.R. 11-6.1 and 20 pages, which complies with the Court's mandatory page limit.

Dated: November 10, 2025                    Respectfully submitted,

                                            /s/ *Matthew Donald Umhofer*
                                            **UMHOFER, MITCHELL & KING LLP**
                                            Matthew Donald Umhofer
                                            Margaret E. Dayton

                                            *Attorneys for Plaintiff Ionis
                                            Pharmaceuticals*

                                            Of Counsel:
                                            **WILLIAMS & CONNOLLY LLP**
                                            Jessamyn Berniker (*pro hac vice*)
                                            Thomas S. Fletcher (SBN 262693)
                                            Kathryn S. Kayali (*pro hac vice*)
                                            Michael X. Liu (*pro hac vice*)
                                            680 Maine Avenue, SW
                                            Washington, DC 20024
                                            (202) 434-5000
                                            jberniker@wc.com
                                            tfletcher@wc.com
                                            kkayali@wc.com
                                            mliu@wc.com

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS