Megan A. Chacon (SBN 304912)
FISH & RICHARDSON P.C.
4695 MacArthur Court, Ste. 1100
Newport Beach, CA 92660
Tel: (949) 623-7640 / Fax: (858) 678-5099
Email: chacon@fr.com

Madelyn S. McCormick (SBN 320063)
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070
Email: mmccormick@fr.com

Louis E. Fogel (*admitted pro hac vice*)
FISH & RICHARDSON P.C.
150 N. Riverside Plaza, Ste. 2820
Chicago, IL 60606
Tel: (312) 278-2601
Email: fogel@fr.com

Attorneys for Defendant and Counterclaim-Plaintiff
Arrowhead Pharmaceuticals, Inc.

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| IONIS PHARMACEUTICALS, INC., a Delaware Corporation, <br><br> Plaintiff, <br><br> v. <br><br> ARROWHEAD PHARMACEUTICALS, INC., a Delaware corporation, <br><br> Defendant. | Case No. 2:25-cv-8609-HDV-AGR <br><br> **ARROWHEAD PHARMACEUTICALS, INC.'S ANSWER TO COMPLAINT AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT** <br><br> **JURY TRIAL DEMANDED** <br><br> District Judge: Hon. Hernan D. Vera <br> Magistrate Judge: Hon. Alicia G. Rosenberg <br><br> Complaint Filed: 09/11/2025 |

1

ARROWHEAD PHARMACEUTICALS, INC.,
a Delaware corporation,

2

                    Counter-Claimant,

3

v.

4

IONIS PHARMACEUTICALS, INC., a
Delaware Corporation,

5

6

                    Counter-Defendant

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT ARROWHEAD'S ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT**

Defendant and Counterclaim-Plaintiff Arrowhead Pharmaceuticals, Inc. ("Arrowhead") hereby responds to Plaintiff Ionis Pharmaceuticals, Inc.'s ("Ionis") Complaint for Patent Infringement ("Complaint") filed on September 11, 2025 (Dkt. No. 1) as follows.

**ANSWER AND DEFENSES**

Arrowhead denies all allegations in the Complaint, whether express or implied, that are not specifically admitted below. Any factual allegation admitted below is admitted only as to the specifically admitted facts, and not as to any purported conclusions, characterizations, implications, or speculations that may arguably follow from the admitted facts. To the extent unnumbered headings or footnotes contained in the Complaint purport to contain allegations supporting Plaintiff's claims, they are denied.

**INTRODUCTION**

1. Scientists at Ionis spent many years searching for a way to treat people with hypertriglyceridemia, a serious condition marked by elevated triglyceride levels in the blood. People with high triglyceride levels face a range of negative health outcomes, including cardiovascular problems and potentially life-threatening acute pancreatitis, a painful inflammation of the pancreas.

**RESPONSE:** Arrowhead admits that people with high triglyceride levels face a range of negative health outcomes. For any remaining allegations and characterizations, Arrowhead is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 and therefore denies them.

2. Over the course of many years, Ionis created and tested a series of candidate medicines designed to reduce the amount of a particular protein, called apolipoprotein C-III ("ApoCIII"). ApoCIII inhibits the function of a second protein, called lipoprotein lipase ("LPL"), which is responsible for breaking down triglycerides. Ionis hoped that by reducing the amount of ApoCIII available to interfere with LPL, the LPL would be free to break down triglycerides more effectively and thereby reduce triglyceride levels. But no one knew whether this idea would work in practice to help patients.

1

ARROWHEAD PHARMACEUTICALS, INC.'S
ANSWER TO COMPLAINT AND COUNTERCLAIMS
Case No. 2:25-cv-8609-HDV-AGR

**RESPONSE:** Arrowhead admits that APOC-III inhibits and interferes with lipoprotein particle clearance and lipolysis through various mechanisms, including by inhibiting the function of lipoprotein lipase ("LPL") as well as by other mechanisms independent of LPL ("LPL-independent mechanisms"). Paragraph 2 further implicates legal conclusions to which no response is required. To the extent a response is required, Arrowhead denies this allegation. For any remaining allegations and characterizations, Arrowhead is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 and therefore denies them.

3.      Instead of targeting the ApoCIII protein directly, Ionis took a different route. Ionis used specially designed molecules called antisense oligonucleotides to target ApoCIII messenger RNA ("mRNA"), which is the genetic material that encodes the ApoCIII protein. Doing so prevents the ApoCIII protein from being made in the first place. After years of research, Ionis created many different molecules that bind to ApoCIII mRNA and thereby inhibit the synthesis of the ApoCIII protein. Ionis ultimately selected one of these oligonucleotides to develop into a clinical drug candidate, called volanesorsen.

**RESPONSE:** Arrowhead is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 and therefore denies them.

4.      The Ionis team started by testing volanesorsen in the general hypertriglyceridemia population—*i.e.*, people with high triglyceride levels, but who were expected to have functional LPL protein. The hope was that for these people, lowering ApoCIII would allow their LPL to break down harmful triglycerides. Ionis was the first company to demonstrate that an ApoCIII inhibitor would in fact work to treat people with hypertriglyceridemia. And it did work—unexpectedly well. Ionis received early, promising study readouts.

**RESPONSE:** Arrowhead is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 and therefore denies them.

5.      Meanwhile, the Ionis team had another extraordinary idea: what if inhibiting ApoCIII *also* could treat people who lacked functional LPL? At the time, this seemed far-fetched. Why would reducing the amount of a protein that inhibits LPL treat people who do not have meaningful levels of functional LPL in the first place? But Ionis decided to move forward with clinical testing on this

patient population nonetheless and added three people with genetic mutations causing LPL deficiency to its clinical trial.

**RESPONSE:** Paragraph 5 implicates legal conclusions to which no response is required. To the extent a response is required, Arrowhead denies this allegation. Arrowhead is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and characterizations in Paragraph 5 and therefore denies them.

6.     The results were nothing short of spectacular, defying both conventional thinking and the expectations of those in the field. Treatment with volanesorsen led to remarkable reductions of triglyceride levels—even in people without meaningful levels of functional LPL. In recognition of its invention of the very first treatment for LPL deficient people, the U.S. Patent and Trademark Office granted Ionis the '333 patent at issue here.

**RESPONSE:** Arrowhead admits that the U.S. Patent and Trademark Office issued U.S. Patent No. 9,593,333 for which Ionis Pharmaceuticals, Inc. is listed on the face of the patent as assignee. Paragraph 6 implicates legal conclusions to which no response is required. To the extent a response is required, Arrowhead denies this allegation. For any remaining allegations and characterizations, Arrowhead is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 and therefore denies them.

7.     Volanesorsen went on to be approved in Europe for the treatment of certain people with familial chylomicronemia syndrome ("FCS"). LPL deficiency is also known as FCS.

**RESPONSE:** Arrowhead admits that the drug volanesorsen was approved in Europe under the tradename WAYLIVRA and is indicated "as an adjunct to diet in adult patients with genetically confirmed familial chylomicronemia syndrome (FCS) and at high risk for pancreatitis, in whom response to diet and triglyceride lowering therapy has been inadequate." (https://www.ema.europa.eu/en/documents/product-information/waylivra-epar-product-information_en.pdf). Arrowhead denies any remaining allegations and characterizations in Paragraph 7.

8.     Meanwhile, Ionis developed a next-generation ApoCIII inhibitor, called olezarsen. In December 2024, the United States Food and Drug Administration ("FDA") approved Tryngolza®

3

(olezarsen), Ionis's next-generation product, for the treatment of adults living with FCS. Ionis
launched Tryngolza® in the United States in December 2024. The FCS community was "overjoyed"
by this news, recognizing Tryngolza® as a "major milestone" in the treatment of FCS.[1, 2]

**RESPONSE:** Arrowhead admits that FDA approved Tryngolza® (olezarsen), an *APOC-III*-directed antisense oligonucleotide (ASO), as an adjunct to diet to reduce triglycerides in adults with FCS in or around December 2024.  Arrowhead further admits that the websites cited in Paragraph 8 contain the quoted language.  On information and belief, Arrowhead admits that Ionis commercially launched Tryngolza® in the U.S. in or around December 2024.  For any remaining allegations and characterizations, Arrowhead is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 and therefore denies them.

9.    When Ionis began to see success in its trials of ApoCIII inhibitors, Defendant Arrowhead Pharmaceuticals saw an opportunity. Instead of carving its own path, it simply copied Ionis's, wrongfully capitalizing on Ionis's many years of research and development by selecting an antisense ApoCIII inhibitor (plozasiran) and applying for FDA approval to use it to treat people with FCS. Arrowhead's application was filed with FDA in January 2025, and FDA is slated to act on that application by November of this year. If plozasiran receives approval, Arrowhead intends to market its copycat product for use in patients with FCS, in blatant disregard for Ionis's patent rights—years ahead of when it is lawfully permitted to do so.

**RESPONSE:** Arrowhead admits that on November 18, 2024, it filed a new drug application for its innovative drug candidate, plozasiran, which is an *APOC-III*-directed small interfering RNA (siRNA), for the treatment of FCS, which was developed using Arrowhead's proprietary Targeted RNAi Molecule (TRIM™) platform.  FDA granted plozasiran Breakthrough Therapy Designation, Fast Track Designation, and Orphan Drug Designation, approving plozasiran under the tradename Redemplo® on November 18, 2025.  Arrowhead otherwise denies any remaining allegations and characterizations in Paragraph 9.

---

[1] The FCS Foundation, LinkedIn, https://www.linkedin.com/posts/the-fcsfoundation_breaking-news-were-thrilled-to-share-we-activity-7276207907954720768-E1fM/
[2] First FDA Approved FCS Treatment, Mission-Cure, https://missioncure.org/fcs-treatment-ionis/

ARROWHEAD PHARMACEUTICALS, INC.'S
ANSWER TO COMPLAINT AND COUNTERCLAIMS
Case No. 2:25-cv-8609-HDV-AGR

10.     Ionis brings this lawsuit to enforce its duly-issued patent rights in the '333 patent.

**RESPONSE:** Arrowhead denies that there is any basis for Ionis's lawsuit and further denies that Ionis is entitled to any relief pursuant to its claim.  Arrowhead denies any remaining allegations and characterizations in Paragraph 10.

## PLAINTIFF

11.     Plaintiff Ionis is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 2855 Gazelle Court, Carlsbad, California 92010.

**RESPONSE:** On information and belief, Arrowhead admits that Ionis is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 2855 Gazelle Court, Carlsbad, California 92010.

## DEFENDANT

12.     Defendant Arrowhead is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 177 East Colorado Boulevard, Ste 700, Pasadena, CA 92205.

**RESPONSE:** Arrowhead admits that it is a Delaware corporation with its headquarters at 177 East Colorado Boulevard, Suite 700, Pasadena, California, 91105.  Arrowhead otherwise denies any remaining allegations and characterizations in Paragraph 12.

## JURISDICTION AND VENUE

13.     This action arises under the Patent Laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

**RESPONSE:** Paragraph 13 states a legal conclusion to which no response is required.  To the extent a response is required, Arrowhead admits that Ionis's Complaint purports to assert claims under the Patent Laws of the United States, Title 35 of the United States Code.  Further, for purposes of this action only, Arrowhead does not contest that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.  Arrowhead denies any remaining allegations or characterizations of Paragraph 13.

14.     The Court has jurisdiction over Arrowhead in this action.

5

ARROWHEAD PHARMACEUTICALS, INC.'S
ANSWER TO COMPLAINT AND COUNTERCLAIMS
Case No. 2:25-cv-8609-HDV-AGR

1    **RESPONSE:** Paragraph 14 states a legal conclusion to which no response is required.  To

2    the extent a response is required, Arrowhead admits that this Court has personal jurisdiction over

3    Arrowhead for the purposes of this action only.

4    15.    Arrowhead is a corporate entity currently doing business in the State of California

5    and having a regular established place of business within the forum. Arrowhead's office and

6    principal place of business located at 177 East Colorado Boulevard, Ste 700, Pasadena, CA 92205

7    is a regular and established place of business within the forum. Arrowhead is listed with the Office

8    of the California Secretary of State as an entity that is currently doing business in the State of

9    California, and the Office of the California Secretary of State has assigned Arrowhead the following

10    business entity number: 2288610.

11    **RESPONSE:** Paragraph 15 includes legal conclusions to which no response is required.  To

12    the extent a response is required, Arrowhead admits that it conducts business within the State of

13    California and its headquarters are within the forum.  Arrowhead further admits that its headquarters

14    are located at 177 East Colorado Boulevard, Suite 700, Pasadena, California 91105.  Arrowhead

15    admits it is listed with the Office of the California Secretary of State as an entity currently doing

16    business in the State of California, and it has been assigned business entity number 2288610 by the

17    Office of the California Secretary of State.

18    16.    Arrowhead purposefully engaged in activities that are directed at the forum, this

19    action arises out of or relates to those activities, and the assertion of personal jurisdiction in the

20    forum comports with traditional notions of fair play and substantial justice.

21    **RESPONSE:** Paragraph 16 states a legal conclusion to which no response is required.  To

22    the extent a response is required, Arrowhead admits that this Court has jurisdiction over Arrowhead

23    for the purposes of this action.  Arrowhead denies any remaining allegations of Paragraph 16.

24    17.    Venue is proper in the Central District of California under 28 U.S.C. §§ 1391(b)(1)

25    and 1400(b) because Arrowhead resides in the Central District of California and a substantial part

26    of the events and injury giving rise to Plaintiff's claims has and continues to occur in the Central

27    District of California.

28

ARROWHEAD PHARMACEUTICALS, INC.'S
ANSWER TO COMPLAINT AND COUNTERCLAIMS
Case No. 2:25-cv-8609-HDV-AGR

**RESPONSE:** Paragraph 17 states a legal conclusion to which no response is required.  To the extent a response is required, Arrowhead does not contest that venue is proper for the purposes of this case in the Central District of California.  Arrowhead denies any remaining allegations in Paragraph 17.

## FACTUAL ALLEGATIONS

### Ionis's Novel Idea Led to a New Treatment Paradigm for FCS

18.    About 30% of Americans suffer from hypertriglyceridemia—*i.e.*, high levels of triglyceride (fat) in their blood. Triglyceride levels over 150 mg/dL are considered abnormal, but for certain people with genetic defects in fat processing, triglyceride levels can exceed 1,000 mg/dL. The results can be dangerous. Severely elevated triglyceride levels are often associated with a build-up of "chylomicrons" (fatty particles) in the blood, and lead to a host of symptoms, including severe inflammation of the pancreas (called acute pancreatitis), which can lead to debilitating abdominal pain, hospitalization, and even death. Other symptoms of high triglyceride levels include xanthomas (a raised, waxy, yellowish skin condition caused by fats building up under the surface of the skin), loss of appetite, nausea and vomiting, and muscle and bone pain.

**RESPONSE:** Arrowhead admits that hypertriglyceridemia is generally characterized as the presence of high amounts of triglycerides in the blood, and that elevated triglyceride levels are often associated with increased levels of chylomicrons in the blood. Arrowhead further admits that hypertriglyceridemia can be associated with a number of symptoms and negative health outcomes. For any remaining allegations and characterizations, Arrowhead is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 and therefore denies them.

19.    Ionis set out to change the lives of these people. Ionis specializes in oligonucleotide medicines that target and destroy molecules called mRNAs that the body uses to make proteins. Proteins are the workhorses of the body and are responsible for almost every bodily function. Sometimes, causing a person to make less of a protein can be helpful—for example, because the protein does something the person needs to happen less, or because the protein inhibits a process that the person needs to happen more. Each protein corresponds to a specific mRNA. Ionis's RNA-

7

targeting medicines can be used to target and destroy the precursor mRNA molecule specific to the harmful protein at issue, thereby causing the person's body to make less of that harmful protein.

**RESPONSE:** Arrowhead admits that proteins are involved in bodily functions.  Arrowhead further admits that the body uses mRNA, among other things, to create proteins.  For any remaining allegations and characterizations, Arrowhead is without knowledge or information sufficient to form a belief as to the truth of the statements in Paragraph 19 and therefore denies them.

20.    To help people suffering from hypertriglyceridemia, Ionis focused its work on targeting mRNA for a protein called ApoCIII. ApoCIII was understood to inhibit the function of LPL, a protein with a critical role in breaking down triglycerides in the blood. Ionis hoped that by reducing the amount of ApoCIII in people with high triglycerides, those people's existing LPL would be available to break down the triglycerides more effectively. Neither Ionis nor anyone else in the field knew whether this approach would work—and if so, whether it would reduce triglyceride levels sufficiently to make a meaningful difference to patient health.

**RESPONSE:** Arrowhead admits that APOC-III was understood to inhibit and interfere with lipoprotein particle clearance and lipolysis through various mechanisms, including by inhibiting the function of lipoprotein lipase (LPL) as well as by other mechanisms independent of LPL (LPL-independent mechanisms), which are involved in the process for breaking down triglycerides in the blood.  Paragraph 20 further implicates legal conclusions to which a response is not required.  To the extent a response is required, Arrowhead denies this allegation. For any remaining allegations and characterizations, Arrowhead is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 and therefore denies them.

21.    Ionis took a chance and put a medicine called volanesorsen into clinical trials. Volanesorsen is an oligonucleotide designed to trigger the degradation of mRNA that encodes the ApoCIII protein. By down-regulating the body's production of ApoCIII, Ionis was hoping to take the brakes off the body's natural LPL fat-metabolizing machinery.

**RESPONSE:** Arrowhead is without knowledge or information sufficient to form a belief as to the truth of the allegations and characterizations in Paragraph 21 and therefore denies them.

22.     But what about the sickest patients—those whose bodies do not make LPL at all, or whose bodies make only very small amounts or defective versions of LPL? For people who suffer from "LPL deficiency" or "LPLD," triglycerides can reach 100 times normal levels—*i.e.*, more than 15,000 mg/dL—and treatment options were virtually nonexistent. With no approved drugs available, doctors could recommend only that such patients severely restrict their diet, which was socially isolating and largely ineffective.

**RESPONSE:** Arrowhead is without knowledge or information sufficient to form a belief as to the truth of the allegations and characterizations in Paragraph 22 and therefore denies them.

23.     For people without meaningful levels of functioning LPL, the prevailing scientific consensus was that suppressing ApoCIII would be ineffective. But the Ionis team thought differently and charted their own path—one that would change the lives of people living with LPLD around the world. Ionis added three individuals with FCS to an ongoing volanesorsen clinical trial; each had genetic mutations known to result in less than 5% of normal LPL activity. To the complete surprise of those in the field, the results were astounding. As the Ionis team explained in a paper published in the *New England Journal of Medicine*, "[a]fter 13 weeks of study-drug administration, plasma APOC3 levels were reduced by 71 to 90% and *triglyceride levels by 56 to 86%*."[3] The study reported that all three participants with FCS achieved triglyceride levels below 500 mg/dL at some point during the study.[4] Thanks to years of research and remarkable scientific insight from the Ionis team, hope for the hardest-to-treat patients had arrived at last. Since its publication, this research has been cited over 190 times and counting. Ultimately, Ionis brought volanesorsen to market in Europe.

**RESPONSE:** Arrowhead admits the paper cited in Paragraph 23 contains the quoted language. Arrowhead further admits that, on information and belief, Ionis received approval to market and sell volanesorsen in Europe. Paragraph 23 implicates legal conclusions to which no response is required. To the extent a response is required, Arrowhead denies these allegations. For

---

[3] Daniel Gaudet et al., *Targeting APOC3 in the Familial Chylomicronemia Syndrome*, 371 New England Journal of Medicine 2200, 2200 (2014) ("NEJM 2014")
[4] *Id.*

9

ARROWHEAD PHARMACEUTICALS, INC.'S
ANSWER TO COMPLAINT AND COUNTERCLAIMS
Case No. 2:25-cv-8609-HDV-AGR

any remaining allegations and characterizations, Arrowhead is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 and therefore denies them.

24.    In connection with publishing this groundbreaking article, Ionis disclosed that they had filed a patent application, PCT/US2014/016546, covering their invention.[5] The United States Patent and Trademark Office subsequently granted Ionis the '333 patent based upon this application.

**RESPONSE:** Arrowhead admits that the citation in Paragraph 24 includes reference to PCT/US2014/016546.  Arrowhead also admits that the U.S. Patent and Trademark Office issued U.S. Patent No. 9,593,333.  For any remaining allegations and characterizations, Arrowhead is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24 and therefore denies them.

25.    In 2024, Ionis sought FDA approval for a new ApoCIII-inhibitor, called olezarsen, to treat people with FCS in the United States. In recognition of the importance of olezarsen to treat people with FCS, the FDA granted olezarsen both Fast Track designation and Breakthrough Therapy designation, and also expedited review of its New Drug Application. The FDA granted olezarsen approval in December 2024. As the FDA explained, "[t]his is a first-in-class approval, meaning [olezarsen] uses a new mechanism of action, or works differently in the body, than other therapies currently used to treat FCS."[6]

**RESPONSE:** Arrowhead admits that FDA approved Tryngolza® (olezarsen) in or around December 2024.  Arrowhead further admits based on publicly available information that FDA granted olezarsen Fast Track designation and Breakthrough Therapy designation.  Arrowhead further admits that the article cited in Paragraph 25 contains the quoted language.  For any remaining allegations and characterization, Arrowhead is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25 and therefore denies them.

---

[5] Supplemental Disclosure Form, NEJM 2014, *available at*
https://www.nejm.org/doi/suppl/10.1056/NEJMoa1400284/suppl_file/nejmoa1400284_disclosures.pdf
[6] *FDA Approves Drug to Reduce Triglycerides in Adult Patients with Familial Chylomicronemia Syndrome*, FDA,
https://www.fda.gov/drugs/news-events-humandrugs/fda-approves-drug-reduce-triglycerides-adult-patients-familialchylomicronemia-syndrome

10
ARROWHEAD PHARMACEUTICALS, INC.'S
ANSWER TO COMPLAINT AND COUNTERCLAIMS
Case No. 2:25-cv-8609-HDV-AGR

26.     Olezarsen is now marketed as Tryngolza® and is changing the lives of people with FCS on a daily basis, including by relieving what was previously an everpresent worry of developing devastating pancreatitis attacks. As one doctor who treats FCS observed, "[t]he FDA approval of Tryngolza is an important moment for people living with FCS, their families and physicians who now, for the first time, have a treatment that significantly lowers triglycerides and decreases the risk of potentially life-threatening acute pancreatitis events, as an adjunct to a low-fat diet."[7] The FCS Foundation, a patient advocacy foundation, announced they were "overjoyed with the news that the FDA has approved the first treatment for patients with Familial Chylomicronemia Syndrome," emphasizing that they "are so happy that our patients will finally get the treatment they deserve."[8] A non-profit patient advocacy organization for individuals with pancreatitis described Tryngolza®'s approval as "a major milestone—not just for people with FCS, but for the entire pancreatitis community."[9]

**RESPONSE:** Arrowhead admits that olezarsen is currently marketed in the U.S. under the trade name, Tryngolza®.  Arrowhead further admits that the articles cited in Paragraph 26 contain the quoted language.  For any remaining allegations and characterizations, Arrowhead is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26 and therefore denies them.

27.     A literature review published in the Annals of Pharmacotherapy also recently lauded the product as "represent[ing] a significant advancement in the treatment of FCS, offering a targeted and effective option for managing this rare genetic disorder," explaining that by "significantly reducing triglyceride levels, olezarsen addresses the limitations of traditional treatments and provides a much-needed therapeutic alternative" and that the medicine's "integration into clinical practice has the potential to transform the management of FCS."[10]

---

[7] *Tryngolza Approved for Familial Chylomicronemia Syndrome*, Endocrinology Advisor, https://www.endocrinologyadvisor.com/news/tryngolza-approved-forfamilial-chylomicronemia-syndrome/
[8] The FCS Foundation, LinkedIn, https://www.linkedin.com/posts/the-fcsfoundation_breaking-news-were-thrilled-to-share-we-activity-7276207907954720768-E1fM/
[9] *First FDA Approved FCS Treatment*, Mission-Cure, https://missioncure.org/fcs-treatment-ionis/
[10] Bradley Phillips et al., *Olezarsen for the Treatment of Familial Chylomicronemia Syndrome*, https://journals.sagepub.com/doi/10.1177/10600280251332500 (April 15, 2025)

**RESPONSE:** Arrowhead is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 and therefore denies them.

28.    In addition to being the first-ever treatment for FCS approved in the United States, olezarsen's commercial launch also represented "a pivotal moment for Ionis," reflecting its "evolution into a fully integrated commercial-stage biotechnology company."[11] It is the first medicine Ionis has ever commercialized entirely on its own, without the help of a commercial partner.

**RESPONSE:** Arrowhead admits the press release cited in Paragraph 28 contains the quoted language.  For any remaining allegations and characterizations, Arrowhead is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 and therefore denies them.

**Arrowhead Copies Ionis's Patented Technology**

29.    After Ionis began to realize extraordinary clinical results and disclosed its invention to the world in the *New England Journal of Medicine* ("NEJM"), Arrowhead saw an opportunity to ride Ionis's coattails. In December 2018, Arrowhead announced it was entering clinical trials for an ApoCIII inhibitor for use in people with FCS.

**RESPONSE:** Arrowhead admits that in or around December 2018 it became publicly posted on clinicaltrials.gov that Arrowhead was planning to initiate a clinical trial entitled "Study of ARO-APOC3 in Healthy Volunteers, Hypertriglyceridemic Patients and Patients With Familial Chylomicronemia Syndrome (FCS)," which as part of the study permitted the enrollment of subjects with FCS as well as patients with hypertriglyceridemia.  For any remaining allegations and characterizations, Arrowhead denies Paragraph 29.

30.    Arrowhead proceeded on this path, despite knowing that Ionis already patented the use of ApoCIII inhibitors to treat people with LPLD in the '333 patent. For example, Ionis's NEJM publication disclosure form discloses that Ionis's research is covered by a patent application that

---

[11] *TRYNGOLZA™ (olezarsen) approved in U.S. as first-ever treatment for adults living with familial chylomicronemia syndrome as an adjunct to diet*, https://ir.ionis.com/news-releases/news-release-details/tryngolzatm-olezarsenapproved-us-first-ever-treatment-adults

ARROWHEAD PHARMACEUTICALS, INC.'S
ANSWER TO COMPLAINT AND COUNTERCLAIMS
Case No. 2:25-cv-8609-HDV-AGR

issued as the '333 patent.[12] Arrowhead cited Ionis's NEJM publication in their own paper on ApoCIII inhibition.[13] In reviewing Ionis's NEJM publication, Arrowhead would have learned of Ionis's patent application covering the use of ApoCIII inhibitors to treat people with LPLD and—given Arrowhead's decision to develop a drug for the same indication—would have monitored this application until it issued as the '333 patent. At a minimum, Arrowhead was willfully blind to the existence of the '333 patent.

**RESPONSE:** Arrowhead admits that the article "RNA Interference Therapy Targeting Apolipoprotein C-III in Hypertriglyceridemia" published in the *New England Journal of Medicine* (available at https://evidence.nejm.org/doi/full/10.1056/EVIDoa2200325) cites the article titled "Targeting APOC3 in the familial chylomicronemia syndrome" (available at https://pubmed.ncbi.nlm.nih.gov/25470695/). Arrowhead denies any remaining allegations and characterizations in Paragraph 30.

31.    Arrowhead also knew about, or was willfully blind to, the '333 patent because it was listed in the FDA's Approved Drug Products with Therapeutic Equivalence Evaluation (known as the "Orange Book") in connection with Tryngolza®. The Orange Book identifies drugs that are approved by the FDA and lists the patents that cover each drug. For any patents that claim a method of use, the FDA also publishes an associated "use code" that describes the patented method. For Tryngolza®, the Orange Book identifies the '333 patent and provides the use code: "U-4050: Use in Reducing Triglyceride Levels in Adults with Familial Chylomicronemia Syndrome (FCS)." As a pharmaceutical company, Arrowhead would have been familiar with the Orange Book listings, as Arrowhead acknowledged in its securities filings: "NDA sponsors are required to list with the FDA each patent with claims that cover the applicant's product or a method of using the product. Each of the patents listed by the NDA sponsor is published in the Orange Book."[14] Because Arrowhead was developing a drug to compete directly with Tryngolza®, Arrowhead would have known about the

---

[12] Supplemental Disclosure Form, NEJM 2014, *available at*
https://www.nejm.org/doi/suppl/10.1056/NEJMoa1400284/suppl_file/nejmoa1400284_disclosures.pdf
[13] Daniel Gaudet et al., *RNA Interference Therapy Targeting Apolipoprotein CIII in Hypertriglyceridemia*, NEJM Evidence (Nov. 17, 2023), *available at* https://evidence.nejm.org/doi/pdf/10.1056/EVIDoa2200325?download=true
[14] Form 10-K, https://ir.arrowheadpharma.com/node/17611/html

ARROWHEAD PHARMACEUTICALS, INC.'S
ANSWER TO COMPLAINT AND COUNTERCLAIMS
Case No. 2:25-cv-8609-HDV-AGR

patents listed for Tryngolza® in the Orange Book and would have further known that the '333 patent covers a method of reducing triglyceride levels in adults with FCS.

**RESPONSE:** Arrowhead states that FDA's Orange Book lists U.S. Patent No. 9,593,333 and Patent Use Code U-4050 which states "use in reducing triglyceride levels in adults with familial chylomicronemia syndrome (FCS)." Paragraph 31 otherwise states legal conclusions to which no response is required. To the extent a response is required, Arrowhead denies the allegations in Paragraph 31.

32.    Furthermore, in its November 26, 2024 securities filing, Arrowhead stated that "if granted marketing approval, we are currently aware of certain patent rights held by third parties that, if found to be valid and enforceable, could be alleged to render one or more of our drug candidates infringing."[15]

**RESPONSE:** Arrowhead admits that the cited SEC filing contains the quoted language. For any remaining allegations and characterizations, Arrowhead denies Paragraph 32.

33.    On information and belief, Arrowhead's reference to potentially infringing drug candidates in its November 26, 2024 securities filing included Plozasiran—its most advanced clinical candidate.

**RESPONSE:** Denied.

34.    Moreover, on information and belief, Arrowhead's reference to "certain patent rights held by third parties" in its November 26, 2024 securities filing included the '333 patent.

**RESPONSE:** Denied.

35.    Despite acknowledging "freedom to operate" issues in its securities filings,[16] Arrowhead chose to ignore Ionis's patent rights and flagrantly copy its path to success. The result is plozasiran, the ApoCIII inhibitor that Arrowhead submitted to FDA in January 2025. The FDA is

---

[15] Form 10-K, https://ir.arrowheadpharma.com/node/19771/html
[16] *Id.*

14
ARROWHEAD PHARMACEUTICALS, INC.'S
ANSWER TO COMPLAINT AND COUNTERCLAIMS
Case No. 2:25-cv-8609-HDV-AGR

set to act upon Arrowhead's submission by November—less than one year after Ionis's Tryngolza® reached the market.[17]

**RESPONSE:** Arrowhead admits that FDA approved Redemplo® (plozasiran) for commercial marketing in the U.S. on November 18, 2025. For any remaining allegations and characterizations, Arrowhead denies Paragraph 35.

36. Arrowhead already is planning for the imminent launch of its product. In April 2025, it announced that "Arrowhead's first commercial launch of plozasiran in familial chylomicronemia [is] planned for Q4 2025 (PDUFA 11/18/25)."[18] Similarly, in its quarterly earnings call on August 7, 2025, Arrowhead reported no indications that plozasiran would face delays in regulatory approval, stating: "the cadence of our interactions with US and global regulators has not changed, nor have our expectations of adhering to established timelines."[19] Arrowhead told its investors that "U.S. launch preparations are now [in] full swing for plozasiran in FCS and we intend to be launch ready even before our PDUFA date."[20]

**RESPONSE:** Arrowhead admits that the references cited in Paragraph 36 contain the quoted language. For any remaining allegations and characterizations, Arrowhead denies Paragraph 36.

37. In light of the aforementioned NEJM publications, the listing in the Orange Book, and the warnings made in Arrowhead's securities filings, among other things, Ionis has every reason to believe that Arrowhead has been aware of the '333 patent for quite some time. Nonetheless, on September 3, 2025, to ensure that Arrowhead has had every opportunity to comply with the United States patent laws, Ionis sent Arrowhead's general counsel a letter emphasizing that "the manufacture, importation, offer for sale, sale, use, or promotion of use of plozasiran would contribute to and induce infringement of the '333 patent." (Exhibit 2). Ionis offered to engage in constructive dialogue regarding its intellectual property rights. Ionis also stated that if Arrowhead

---

[17] *Arrowhead Pharmaceuticals Announces Acceptance of New Drug Application by U.S. FDA of Plozasiran for the Treatment of Familial Chylomicronemia Syndrome*, https://ir.arrowheadpharma.com/news-releases/news-release-details/arrowheadpharmaceuticals-announces-acceptance-new-drug (Jan. 17, 2025)

[18] *Corporate Overview*, Arrowhead Pharmaceuticals, https://ir.arrowheadpharma.com/static-files/25007351-232f-400a-bc0e-0fd4e2906fe8

[19] *Fiscal 2025 Third Quarter Conference Call – Prepared Remarks* at 9, Arrowhead Pharmaceuticals, https://ir.arrowheadpharma.com/static-files/30338961-1938-4e72-8120-41a85d47f80b

[20] *Id.* at 8.

15

ARROWHEAD PHARMACEUTICALS, INC.'S
ANSWER TO COMPLAINT AND COUNTERCLAIMS
Case No. 2:25-cv-8609-HDV-AGR

was not prepared to have a dialogue, Ionis would file suit on September 11, 2025, in Arrowhead's home forum, the Central District of California. On September 5th, Arrowhead responded that it was evaluating Ionis's letter. (Exhibit 3). Arrowhead did not further respond to Ionis. Instead, on September 10th, the day before Ionis had indicated it was planning to file this action in the Central District of California, Arrowhead filed an improper anticipatory Declaratory Judgment action against Ionis in the District of Delaware.

**RESPONSE:** Arrowhead admits that on or around September 3, 2025, it received a letter from Ionis, which is attached to the Complaint as **Exhibit 2**. Arrowhead admits that in the letter, Ionis stated it would file suit on September 11, 2025 in this District. Arrowhead admits that on September 5, 2025, it responded to Ionis in an email, which is attached to the Complaint as **Exhibit 3**. Arrowhead admits that on September 10, 2025, it filed a Declaratory Judgment action against Ionis in the District of Delaware. For any remaining allegations and characterizations, Arrowhead denies Paragraph 37.

38.     Arrowhead's shortcut to market will infringe Ionis's patent rights. As described in further detail below, the use of plozasiran to treat people with LPLD will infringe several claims of Ionis's '333 patent.

**RESPONSE:** Denied.

### COUNT 1 – [ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 9,593,333 UNDER U.S.C. §§ 271 (b) AND (c)

39.     Ionis incorporates by reference the allegations set forth above as if fully set forth herein.

**RESPONSE:** No response is required to the incorporation by reference of Paragraphs 1–38. To the extent a response is required, Arrowhead re-alleges and incorporates by reference each of its foregoing responses as if fully set forth herein.

40.     On March 14, 2017, the U.S. Patent and Trademark Office duly and legally issued the '333 patent, entitled "Modulation of apolipoprotein C-III (ApoCIII) expression in lipoprotein lipase deficient (LPLD) populations." The patent is attached as Exhibit 1.

**RESPONSE:** Arrowhead admits that a purported copy of U.S. Patent No. 9,593,333 (the "'333 patent") is attached to the Complaint as **Exhibit 1**, that the face of the '333 patent indicates that it is titled "Modulation of apolipoprotein C-III (ApoCIII) expression in lipoprotein lipase deficient (LPLD) populations," and that the face of the '333 patent indicates that it was issued on March 14, 2017. Arrowhead denies any remaining allegations and characterizations in Paragraph 40.

41.     Ionis is the owner of all right, title, and interest in the '333 patent.

**RESPONSE:** Arrowhead admits that Ionis is listed as the assignee on the face of the '333 patent, attached to the Complaint as **Exhibit 1**. For any remaining allegations and characterizations, Arrowhead is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 and therefore denies them.

42.     The '333 patent has not yet expired.

**RESPONSE:** Arrowhead is without knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 42 and therefore denies it.

43.     On information and belief, Arrowhead filed a New Drug Application ("NDA") seeking to market plozasiran (25mg) for the treatment of FCS, and FDA accepted that application on January 17, 2025.[21]

**RESPONSE:** Admitted.

44.     On information and belief, Arrowhead submitted its NDA seeking FDA approval to market plozasiran with the intention to engage in the commercial manufacture, use, offer for sale, and/or sale in the United States, or import into the United States, of plozasiran before the expiration of the '333 patent.

**RESPONSE:** Denied.

45.     FDA expects to make a decision as to whether to approve Arrowhead's plozasiran NDA no later than November 18, 2025.[22]

---

[21] *Arrowhead Pharmaceuticals Announces Acceptance of New Drug Application by U.S. FDA of Plozasiran for the Treatment of Familial Chylomicronemia Syndrome*, https://ir.arrowheadpharma.com/news-releases/news-release-details/arrowheadpharmaceuticals-announces-acceptance-new-drug (Jan. 17, 2025)
[22] *Id.*

17
ARROWHEAD PHARMACEUTICALS, INC.'S
ANSWER TO COMPLAINT AND COUNTERCLAIMS
Case No. 2:25-cv-8609-HDV-AGR

**RESPONSE:** Arrowhead admits that FDA stated it expected to make a decision as to whether to approve Arrowhead's plozasiran NDA no later than November 18, 2025.

46.     On information and belief, following FDA approval, Arrowhead intends to and will immediately infringe the '333 patent under 35 U.S.C. § 271(b) and/or (c) as a result of its activities relating to the manufacture, importation, offer for sale, sale, use, or promotion of use of plozasiran.

**RESPONSE:** Denied.

47.     On information and belief, such conduct will contribute to and induce infringement of multiple claims of the '333 patent. For example, such conduct will contribute to and induce infringement of at least claims 1-7, 9, 10, 14, 15, 18, 20-23 of the '333 patent, literally and/or under the doctrine of equivalents.

**RESPONSE:** Denied.

48.     For example, claims 1-3 of the '333 Patent recite:

1. A method of treating or ameliorating lipoprotein lipase deficiency (LPLD) in an animal comprising administering a therapeutically effective amount of a compound comprising an ApoCIII specific inhibitor to the animal, wherein: administering the compound reduces a triglyceride level by at least 10%, thereby treating or ameliorating LPLD.
2. The method of claim 1, wherein the ApoCIII specific inhibitor comprises a nucleic acid capable of inhibiting the expression or activity of ApoCIII.
3. The method of claim 1, wherein the ApoCIII specific inhibitor comprises an antisense compound targeting ApoCIII.

**RESPONSE:** Arrowhead admits that Paragraph 48 recites claims 1–3 of the '333 patent. For any remaining allegations and characterizations, Arrowhead denies Paragraph 48.

49.     Arrowhead has stated that it intends to market plozasiran in a manner that will induce or contribute to infringement of the '333 patent.

**RESPONSE:** Denied.

50.     Arrowhead has stated that it intends to market plozasiran as a method of treating or ameliorating LPLD in patients. For example, on January 17, 2025, Arrowhead issued a press release stating that "Arrowhead Pharmaceuticals, Inc. (NASDAQ: ARWR) today announced that the U.S. Food and Drug Administration (FDA) has accepted the New Drug Application (NDA) for investigational plozasiran for the treatment of familial chylomicronemia syndrome (FCS), a severe

ARROWHEAD PHARMACEUTICALS, INC.'S
ANSWER TO COMPLAINT AND COUNTERCLAIMS
Case No. 2:25-cv-8609-HDV-AGR

and rare genetic disease."[23] Arrowhead also has stated that "[t]he clinical basis of the NDA submission is comprised of the positive findings in the Phase 3 PALISADE study." Arrowhead further described "the PALISADE study (NCT05089084)" as "a Phase 3 placebo controlled study to evaluate the efficacy and safety of plozasiran in adults with genetically confirmed or clinically diagnosed FCS."[24] LPLD is also known as FCS.

**RESPONSE:** Arrowhead admits that the press release cited in Paragraph 50 contains the quoted language.  For any remaining allegations and characterizations, Arrowhead is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50 and therefore denies them.

51.    On information and belief, the prescribing information for plozasiran, once approved, will instruct physicians to administer plozasiran for the treatment of patients who have LPLD.

**RESPONSE:** Arrowhead admits that Redemplo® (plozasiran) is indicated as an adjunct to diet to reduce triglycerides in adults with familial chylomicronemia syndrome (FCS).  For any remaining allegations and characterizations, Arrowhead denies Paragraph 51.

52.    Plozasiran is an ApoCIII specific inhibitor. Arrowhead has stated that plozasiran is an "investigational RNA interference (RNAi) therapeutic designed to reduce production of apolipoprotein C-III (APOC3)."[25]

**RESPONSE:** Arrowhead admits that plozasiran is an apolipoprotein C-III (APOC-III)-directed small interfering ribonucleic acid (siRNA).  Arrowhead further admits that the article cited in Paragraph 52 contains the quoted language.  For any remaining allegations and characterizations, Arrowhead denies Paragraph 52.

53.    On information and belief, Arrowhead intends to market plozasiran with labeling/prescribing information that directs administration of a therapeutically effective amount of

---

[23] *Arrowhead Pharmaceuticals Announces Acceptance of New Drug Application by U.S. FDA of Plozasiran for the Treatment of Familial Chylomicronemia Syndrome*, https://ir.arrowheadpharma.com/news-releases/news-release-details/arrowheadpharmaceuticals-announces-acceptance-new-drug (Jan. 17, 2025)
[24] *Id.*
[25] *Id.*

19
ARROWHEAD PHARMACEUTICALS, INC.'S
ANSWER TO COMPLAINT AND COUNTERCLAIMS
Case No. 2:25-cv-8609-HDV-AGR

1   plozasiran to patients. On information and belief, the prescribing information for plozasiran, once

2   approved, will instruct physicians to administer a therapeutically effective amount of plozasiran to

3   patients.

4       **RESPONSE:** Paragraph 53 implicates legal conclusions to which no response is required.

5   To the extent a response is required, Arrowhead admits that the prescribing information for

6   Redemplo® (plozasiran) includes Dosage and Administration information and Dosage Forms and

7   Strength information.   Arrowhead denies any remaining allegations and characterizations in

8   Paragraph 53.

9       54.    On information and belief, Arrowhead intends to market plozasiran as a method of

10  reducing a triglyceride level by at least 10%, thereby treating or ameliorating FCS. For example,

11  Arrowhead has stated that in its phase III PALISADE trial, "plozasiran achieved deep and durable

12  reductions in triglycerides with a median change from baseline of 80% in the plozasiran 25 mg

13  group."[26] On information and belief, administering plozasiran in accordance with Arrowhead's label

14  will reduce triglyceride levels by at least 10%, thereby treating or ameliorating LPLD.

15      **RESPONSE:** Paragraph 54 implicates legal conclusions to which no response is required.

16  To the extent a response is required, Arrowhead admits that the prescribing information for

17  Redemplo® (plozasiran) includes clinical study information regarding safety and efficacy.

18  Arrowhead further admits that the article cited in Paragraph 54 contains the quoted language.

19  Arrowhead denies any remaining allegations and characterizations in Paragraph 54.

20      55.    Plozasiran is an ApoCIII specific inhibitor that comprises a nucleic acid capable of

21  inhibiting the expression or activity of ApoCIII. In particular, Plozasiran is a type of nucleic acid

22  called small-interfering RNA ("siRNA") and Arrowhead has described plozasiran as an

23  "investigational RNA interference (RNAi) therapeutic designed to reduce production of

24  apolipoprotein C-III (APOC3)."[27]

25      **RESPONSE:** Arrowhead admits that plozasiran is an apolipoprotein C-III (APOC-III)-

26  directed small interfering ribonucleic acid (siRNA).  Arrowhead further admits that the article cited

27  
[26] *Id.*

28  [27] *Id.*

ARROWHEAD PHARMACEUTICALS, INC.'S
ANSWER TO COMPLAINT AND COUNTERCLAIMS
Case No. 2:25-cv-8609-HDV-AGR

in Paragraph 55 contains the quoted language.  Arrowhead denies any remaining allegations and characterizations in Paragraph 55.

56.    Plozasiran is an ApoCIII specific inhibitor that comprises an antisense compound targeting ApoCIII.

**RESPONSE:** Arrowhead admits that plozasiran is an apolipoprotein C-III (APOC-III)-directed small interfering ribonucleic acid (siRNA).  For any remaining allegations and characterizations, Arrowhead denies Paragraph 56.

57.    On information and belief, Arrowhead has had knowledge of the '333 patent for years.

**RESPONSE:** Denied.

58.    There is no question that Arrowhead presently has knowledge of the '333 patent which was identified in Ionis's letter of September 3, 2025. Arrowhead acknowledged receipt of that letter on September 5, 2025. Furthermore, Arrowhead has knowledge of the '333 patent by virtue of the filing of this Complaint.

**RESPONSE:** Arrowhead admits that it received a letter from Ionis on or around September 3, 2025, attached to the Complaint as **Exhibit 2**, and the letter identified the '333 patent.  Arrowhead further admits that the '333 patent is the subject of the Complaint.  For any remaining allegations and characterizations, Arrowhead denies Paragraph 58.

59.    Arrowhead knows (or at the very least is willfully blind to the fact) that use of plozasiran will infringe the '333 patent.

**RESPONSE:** Denied.

60.    Arrowhead has an affirmative intent to actively induce infringement by others of one or more claims of the '333 patent. On information and belief, Arrowhead's proposed labeling for plozasiran will instruct medical practitioners and/or patients to administer and/or use plozasiran in a manner that infringes one or more claims of the '333 patent.

**RESPONSE:** Denied.

61.     On information and belief, Arrowhead has not, in its current application to the FDA, sought approval of plozasiran for any use other than one that infringes the '333 patent, and plozasiran therefore has no substantial non-infringing use.

**RESPONSE:** Denied.

62.     On information and belief, Arrowhead knows or should know that it will aid and abet another's direct infringement of at least one of the claims of the '333 patent at least by recommending such infringing acts in its labeling for plozasiran.

**RESPONSE:** Denied.

63.     In view of Arrowhead's submission of its NDA and the FDA's response date of November 18, 2025, an actual controversy has arisen and now exists between the parties concerning whether Arrowhead will infringe by actively inducing and/or contributing to the infringement of one or more claims of the '333 patent.

**RESPONSE:** Arrowhead admits there is an actual controversy between Arrowhead and Ionis regarding the infringement and validity of the '333 patent.  Arrowhead denies that Ionis is entitled to relief pursuant to its claim and denies any remaining allegations and characterizations in Paragraph 63.

64.     Ionis is entitled to a declaration that commercial marketing of plozasiran before the expiration of the '333 patent would actively induce or contribute to the infringement of one or more claims of the '333 patent, making Arrowhead liable for infringement under 35 U.S.C. § 271(b) and/or (c).

**RESPONSE:** Denied.

65.     Upon launch of plozasiran, as a consequence of Arrowhead's infringement of the '333 patent, Ionis will suffer monetary damages in an amount not yet determined, but that includes lost profits from foregone sales of Tryngolza®, and/or a reasonable royalty.

**RESPONSE:** Denied.

ARROWHEAD PHARMACEUTICALS, INC.'S
ANSWER TO COMPLAINT AND COUNTERCLAIMS
Case No. 2:25-cv-8609-HDV-AGR

1

## **PRAYER FOR RELIEF**

2          Arrowhead denies that Ionis is entitled to any relief sought in its Complaint and Prayer for

3    Relief or otherwise and requests that the Court deny all relief to Ionis, including that requested by

4    Ionis in their Prayer for Relief.

5

## **JURY TRIAL DEMANDED**

6          Arrowhead hereby demands a jury trial in this action for any issue so triable.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARROWHEAD PHARMACEUTICALS, INC.'S
ANSWER TO COMPLAINT AND COUNTERCLAIMS
Case No. 2:25-cv-8609-HDV-AGR

**AFFIRMATIVE DEFENSES**

Further answering the Complaint, Arrowhead asserts the following defenses without assuming any burden that they would not otherwise have, including without admitting or acknowledging that they bear the burden of proof as to any of them.  Arrowhead reserves the right to amend its answer with additional defenses as further information is obtained.  Arrowhead further sets forth these defenses without waiver, limitation, or prejudice to the denials set forth in its Answer and without admitting any allegation of the Complaint not expressly admitted herein.

**FIRST AFFIRMATIVE DEFENSE**

**(Non-Infringement of the '333 patent)**

66.    Arrowhead has not infringed and does not infringe, under any theory of infringement, any valid, enforceable claim of the '333 patent, either literally or under the doctrine of equivalents, and has not committed any acts in violation of 35 U.S.C. § 271.

**SECOND AFFIRMATIVE DEFENSE**

**(Invalidity of the '333 patent)**

67.    Each asserted claim of the '333 patent is invalid for failure to comply with one or more of the requirements of the United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, 112, and 116, and the rules, regulations, and laws pertaining thereto.

**THIRD AFFIRMATIVE DEFENSE**

**(Failure to State a Claim)**

68.    Ionis's Complaint fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12 because, among other things, at the time the Complaint was filed, Ionis failed to plausibly allege that Arrowhead manufactured, used, offered for sale, and/or sold in the United States, or imported into the United States, plozasiran.  At the time the Complaint was filed, plozasiran had not yet been approved by FDA.

**FOURTH AFFIRMATIVE DEFENSE**

**(No Willful Conduct)**

69.    Should Arrowhead be found to infringe any valid, enforceable claim of the '333 patent, Arrowhead's conduct was not willful.

ARROWHEAD PHARMACEUTICALS, INC.'S
ANSWER TO COMPLAINT AND COUNTERCLAIMS
Case No. 2:25-cv-8609-HDV-AGR

**FIFTH AFFIRMATIVE DEFENSE**

**(Not an Exceptional Case)**

70.    Arrowhead's actions relation to this suit do not give rise to an exceptional case finding under 35 U.S.C. § 285

**SIXTH AFFIRMATIVE DEFENSE**

**(Limitations on Damages)**

71.    Ionis's claims for damages are statutorily limited under 35 U.S.C. §§ 286 and 287. Ionis is barred from recovering costs in this action under 35 U.S.C. § 288.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Prior Art)**

72.    To the extent Ionis relies on the doctrine of equivalents to allege infringement, Ionis's claims are barred because the asserted scope of the equivalency encompasses or ensnares the prior art.

**EIGHTH AFFIRMATIVE DEFENSE**

**(No Increased Damages)**

73.    Should Arrowhead be found to infringe any valid, enforceable claim of the '333 patent, Ionis is precluded from recovering increased damages under 35 U.S.C. § 284 as such alleged infringement was not willful.

**NINTH AFFIRMATIVE DEFENSE**

**(Prosecution History Estoppel)**

74.    Ionis's is estopped from construing the claims of the '333 patent in a way that may cover Arrowheads activities by the doctrine of prosecution history estoppel and/or disclaimer based on amendments, statements, representations, and/or admissions made during prosecution of the patent application resulting in the '333 patent.

**TENTH AFFIRMATIVE DEFENSE**

**(No Injunctive Relief)**

75.    Although Ionis is not presently seeking injunctive relief, Arrowhead asserts this defense to preserve its rights should Ionis's position change.  Ionis is not entitled to injunctive relief

25

1    because any injury to Ionis is not immediate or irreparable, because Ionis has an adequate remedy

2    at law, because public interest would be disserved by an injunction, and because the balance of

3    equities does not favor Ionis.

4                              **ARROWHEAD'S COUNTERCLAIMS**

5            Defendant and Counterclaim-Plaintiff Arrowhead Pharmaceuticals, Inc. ("Arrowhead")

6    alleges against Ionis as follows:

7                                       **PARTIES**

8            1.      Arrowhead Pharmaceuticals, Inc. is a corporation organized and existing under the

9    laws of the State of Delaware, having its headquarters at 177 East Colorado Boulevard, Suite 700,

10   Pasadena, California 91105.

11           2.      Upon information and belief, and based upon Paragraph 11 of the Complaint, Ionis

12   Pharmaceuticals is a corporation organized under the laws of the State of Delaware, having its

13   principal place of business at 2855 Gazelle Court, Carlsbad, California 92010.

14                               **JURISDICTION AND VENUE**

15           3.      Arrowhead realleges the foregoing paragraphs as if fully set forth herein.

16           4.      These counterclaims arise under the Patent Laws of the United States, Title 35,

17   United States Code. The subject matter jurisdiction of this Court is proper under at least 35 U.S.C.

18   §§ 1331 and 1338.

19           5.      Ionis has consented to the personal jurisdiction of this Court at least by commencing

20   its action for patent infringement in this District.

21           6.      Venue is proper in this District pursuant to at least 28 U.S.C. §§ 1391 and 1400.

22                               **COUNTERCLAIM COUNT I**

23             **(Declaratory Judgment of Non-Infringement of the '333 Patent)**

24           7.      Arrowhead realleges the foregoing paragraphs as if fully set forth herein.

25           8.      Based on Ionis's filing of this action, and at least Arrowhead's First Affirmative

26   Defense, an actual and justiciable controversy now exists between the parties as to whether

27   Arrowhead infringes U.S. Patent No. 9,593,333 (the "'333 patent").

28

ARROWHEAD PHARMACEUTICALS, INC.'S
ANSWER TO COMPLAINT AND COUNTERCLAIMS
Case No. 2:25-cv-8609-HDV-AGR

9.      Arrowhead has not infringed and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claims of the '333 patent under 35 U.S.C. § 271. For example, and without limitation to other non-infringement defenses and/or counterclaims Arrowhead may raise in this action, no valid claim of the '333 patent encompasses a method of treating LPLD using small interfering RNA (siRNAi) therapeutic that utilize the RNA interference (RNAi) mechanism. Because Arrowhead's Redemplo® (plozasiran) treats familial chylomicronemia syndrome ("FCS"), Arrowhead does not and will not infringe any valid and enforceable claim of the '333 patent.

10.      Pursuant to 28 U.S.C. § 2201 et seq., Arrowhead is entitled to a judicial declaration that the making, use, offer for sale, sale, or import into the United States of Arrowhead's Redemplo® (plozasiran) does not and will not infringe any valid and enforceable claim of the '333 patent under 35 U.S.C. § 271. Such a declaration is necessary and appropriate at this time to determine the rights and obligations of the parties.

**COUNTERCLAIM COUNT II**

**(Declaratory Judgment of Invalidity of the '333 Patent)**

11.      Arrowhead realleges the foregoing paragraphs as if fully set forth herein.

12.      Based on Ionis's filing of this action and at least Arrowhead's Second Affirmative Defense, an actual and justiciable controversy now exists between the parties as to whether the claims of the '333 patent are valid.

13.      The claims of the '333 patent are invalid for failing to meet the requirements of Title 35 of the United States Code, including without limitation, one or more of §§ 101, 102, 103, and 112, improper inventorship, the doctrine of obviousness-type double patenting, and/or pursuant to other judicially created or non-statutory requirements for patentability and/or equitable doctrines.

14.      As one example, the claims of the '333 patent are invalid for anticipation under 35 U.S.C. § 102 and/or obviousness under 35 U.S.C. § 103 in light of prior art that published or was otherwise available to the public before the earliest possible priority date of the '333 patent.

15.      For example, and without limiting the grounds of invalidity or invalidating prior art that will be asserted in this action, the following prior art references anticipate and/or render obvious

27

ARROWHEAD PHARMACEUTICALS, INC.'S
ANSWER TO COMPLAINT AND COUNTERCLAIMS
Case No. 2:25-cv-8609-HDV-AGR

1    each and every claim of the '333 patent: U.S. Patent No. 7,598,227; International Pat. App. Pub.

2    No. WO2010/080953 (published July 15, 2010) ("Mullick"); International Pat. App. Pub. No.

3    WO2012/149495 (published November 1, 2012) ("Mullick II"); International Pat. App. Pub. No.

4    WO2010/083615 (published July 29, 2010) ("Macdonald"); International Pat. App. Pub. No.

5    WO2012/177947 (published December 27, 2012) ("Bettencourt"); Ionis Pharma., Inc., *Safety,*

6    *Tolerability, and Pharmacokinetic Study of ISIS ApoC-III Rx in Hypertriglyceridemia*, NIH,

7    https://clinicaltrials.gov/study/NCT01529424 (published February 7, 2012); Paavo K.J. Kinnunen

8    & Christian Ehnholm, *Effect of Serum and C-apoproteins from Very Low Density Lipoproteins on*

9    *Human Postheparin Plasma Hepatic Lipase*, 65 FEBS LETTERS 354, 354–57 (1976); Ephraim

10   Sehayek & Shlomo Eisenberg, *Mechanisms of Inhibition by Apolipoprotein C of Apolipoprotein E-*

11   *dependent Cellular Metabolism of Human Triglyceride-rich Lipoproteins Through the Low Density*

12   *Lipoprotein Receptor Pathway*, 266 J. BIOLOGICAL CHEMISTRY 18259, 18259–67 (1991); K.

13   Aalto-Setala et al., *Mechanism of Hypertriglyceridemia in Human Apolipoprotein (Apo) CIII*

14   *Transgenic Mice*, 90 J. CLINICAL INVESTIGATION 1889, 1889–1900 (1992); Pat. Pub. No.

15   US2011/0060030 (published on March 10, 2011) ("Crooke"); Miek C. Jong et al., *Role of ApoCs in*

16   *Lipoprotein Metabolism: Functional Differences Between ApoC1, ApoC2, and ApoC3*, 19

17   ARTERIOSCLEROSIS, THROMBOSIS, & VASCULAR BIOLOGY 472, 472–84 (1999);

18   Christopher J. Mann et al., *Inhibitory Effects of Specific Apolipoprotein C-III Isoforms on the*

19   *Binding of Triglyceride-rich Lipoproteins to the Lipolysis-stimulated Receptor*, 272 J.

20   BIOLOGICAL CHEMISTRY 31348, 31348–54 (1997); Ronald M. Krauss, *Lipids and*

21   *Lipoproteins in Patients with Type 2 Diabetes*, 27 DIABETES CARE 1496, 1496–1504 (2004);

22   Esther M. M. Ooi et al., *Apolipoprotein C-III: Understanding an Emerging Cardiovascular Risk*

23   *Factor*, 114 CLINICAL SCI. 611, 611–24 (2008); Chunyu Zheng et al., *Apolipoprotein C-III and*

24   *the Metabolic Basis for Hypertriglyceridemia and the Dense Low-Density Lipoprotein Phenotype*,

25   121 CIRCULATION 1722, 1722–34 (2010); Donald S. Fredrickson, et al., *A System for*

26   *Phenotyping Hyperlipoproteinemia*, 31 CIRCULATION 321, 321–27 (1965); Donald S.

27   Fredrickson et al., *Fat Transport in Lipoproteins – An Integrated Approach to Mechanisms and*

28   *Disorders (Continued)*, 276 NEJM 148, 148–56 (1967); Alan Chait et al., *Chylomicronemia*

*Syndrome*, 37 ADVANCES IN INTERNAL MED. 249, 249–73 (1992); Tetsu Ebara et al.,
*Chylomicronemia due to Apolipoprotein CIII Overexpression in Apolipoprotein E-null Mice*, 99 J.
CLINICAL INVESTIGATION 2672, 2672–81 (1997); Neil S. Schachter, *Apolipoproteins C-I and
C-III as important modulators of lipoprotein metabolism*, 12 CURRENT OP. IN LIPIDOLOGY
297, 297–304 (2001); Frances T. Yen et al., *Lipolysis Stimulated Lipoprotein Receptor: A Novel
Molecular Link Between Hyperlipidemia, Weight Gain, and Atherosclerosis in Mice*, 283 J.
BIOLOGICAL CHEMISTRY 25650, 25650–59 (2008); Kristin I. Stanford et al., *Syndecan-1 is the
Primary Heparan Sulfate Proteoglycan Mediating Hepatic Clearance of Triglyceride-rich
Lipoproteins in Mice*, 119 J. CLINICAL INVESTIGATION 3236, 3236–45 (2009); Karine
Tremblay et al., *Etiology and Risk of Lactescent Plasma and Severe Hypertriglyceridemia*, 5 J.
CLINICAL LIPIDOLOGY 37, 37–44 (2011); Cynthia Chatterjee & Daniel Sparks, *Hepatic Lipase,
High Density Lipoproteins, and Hypertriglyceridemia*, 178 AM. J. PATHOLOGY 1429, 1429–33
(2011); Takanari Gotoda et al., *Diagnosis and Management of Type I and Type V
Hyperlipoproteinemia*, 19 J. ATHEROSCLEROSIS & THROMBOSIS. 1, 1–12 (2012); Zemin Yao
& Yuwei Wang, *Apolipoprotein C-III and Hepatic Triglyceride-rich Lipoprotein Production*, 23
CURRENT OP. LIPIDOLOGY 206, 206–12 (2012).

16.    As another example, and without limiting the invalidity defenses and/or
counterclaims that may be asserted in this action, each claim of the '333 patent is invalid for lack of
written description, lack of enablement, and/or indefiniteness under 35 U.S.C. § 112.

17.    The claims of the '333 patent are directed to treating or ameliorating lipoprotein
lipase deficiency (LPLD) through administration of an APOC-III specific inhibitor. But the '333
patent fails to provide sufficient written description and/or enabling disclosure, such as a
representative number of species falling within the broad genus of APOC-III specific inhibitors that
would treat or ameliorate LPLD or structural features common to the members of that broad genus
so that one of skill in the art at the time of the purported invention could visualize or recognize all
members of the purportedly claimed genus. Indeed, for example, the breadth of the claims of the
'333 patent is so broad as to cover at least any form of the claimed APOC-III specific inhibitor, any
animal, and any therapeutically effective amount, without the requisite disclosure in the

ARROWHEAD PHARMACEUTICALS, INC.'S
ANSWER TO COMPLAINT AND COUNTERCLAIMS
Case No. 2:25-cv-8609-HDV-AGR

specification. Therefore, the '333 patent specification fails to convey to a person of ordinary skill in the art that the inventors were in possession of the full scope of the claimed invention.

18.     In addition, given the breadth of the claims, the specification fails to teach a person of ordinary skill in the art how to make and/or use the full scope of the claimed invention without undue experimentation.

19.     Pursuant to 28 U.S.C. § 2201 *et seq.*, Arrowhead is entitled to a judicial declaration that all the claims of the '333 patent are invalid. Such a declaration is necessary and appropriate at this time to determine the rights and obligations of the parties.

## **PRAYER FOR RELIEF**

WHEREFORE, Arrowhead respectfully requests that the Court enter judgment in Arrowhead's favor and against Ionis by granting the following relief:

A.  Declaring that all claims of the '333 patent are invalid;

B.  Declaring that all claims of the '333 patent are unenforceable;

C.  Declaring that Arrowhead has not, does not, and will not infringe any valid and enforceable claim of the '333 patent;

D.  Entering judgment in Arrowhead's favor on all counts in Ionis's Complaint;

E.  Dismissing Ionis's Complaint with prejudice;

F.  Finding that this action is an exceptional case under 35 U.S.C. § 285 and awarding Arrowhead its costs and attorneys' fees; and

G.  Awarding any further relief the Court may deem proper and just.

Dated:  January 12, 2026                     FISH & RICHARDSON P.C.


                                      By:   */s/ Megan A. Chacon*

                                      Megan A. Chacon (SBN 304912)
                                      FISH & RICHARDSON P.C.
                                      4695 MacArthur Court, Ste. 1100
                                      Newport Beach, CA 92660
                                      Tel: (949) 623-7640
                                      Email: chacon@fr.com

30

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Madelyn S. McCormick (SBN 320063)
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070
Email: mmccormick@fr.com

Louis E. Fogel (*admitted pro hac vice*)
FISH & RICHARDSON P.C.
150 N. Riverside Plaza, Ste. 2820
Chicago, IL 60606
Tel: (312) 278-2601
Email: fogel@fr.com
Attorneys for Defendant and Counterclaim-Plaintiff
Arrowhead Pharmaceuticals, Inc

31